**Appeal of Lynnwood G. CAPPS, Barbara J. Capps, Commonwealth Eastern Mortgage Corporation.**

No. 87–1182.

United States Court of Appeals,
Third Circuit.

Argued Oct. 7, 1987.

Decided Dec. 9, 1987.

Leslie J. Carson, Jr. (argued), Philadelphia, Pa., for appellant.

Mitchell W. Miller (argued), Miller and Miller, Philadelphia, Pa., for appellee.

Before WEIS and STAPLETON, Circuit Judges, and DIAMOND, District Judge [*]

OPINION OF THE COURT

STAPLETON, Circuit Judge.

This appeal requires us to determine whether the Bankruptcy Code provides that a Chapter 13 debtor who seeks to cure a home mortgage default must pay interest on mortgage arrearages, even though the mortgage contract does not itself provide for such payments. Both the bankruptcy court and the district court concluded that the debtor need not make interest payments. We reach the same conclusion.

I.

Lynnwood and Barbara Capps filed a Chapter 13 bankruptcy petition in the Bankruptcy Court for the Eastern District

---

* Honorable Gustave Diamond, United States District Judge for the Western District of Pennsylvania, sitting by designation.

of Pennsylvania. Appellant Commonwealth Eastern Mortgage Corp. (Commonwealth), whose claim arose from a note secured by a mortgage on the debtors' principal residence, was the Capps' largest single creditor.

The final installment on Commonwealth's mortgage was not due for nearly 29 years. The Capps' reorganization plan proposed that the mortgage be cured and reinstated pursuant to 11 U.S.C. § 1322(b)(5),[1] which governs cures of long term mortgages.

Under the plan, the Capps would pay their arrearages over a period of five years. They also would pay the monthly installments of their mortgage, outside the plan, as they came due. Commonwealth objected to the Capps' plan.

Shortly after the Capps filed their plan, Commonwealth filed a proof of claim. $6,564.41 of the claim related to arrearages. Of the $6,564.41, $1755.97 was attributable to interest that would accrue on the arrearages during the course of the Capps' Chapter 13 plan. The Capps objected to Commonwealth's contention that they should pay interest on the arrearages.

The bankruptcy court held a hearing to determine whether interest would be required. Commonwealth acknowledged at that time, as it has throughout, that its interest claim has no contractual basis. As recorded in the "Statement of Evidence and Proceedings" agreed to by both parties, Commonwealth "[conceded at the hearing] that the mortgage and note contained no provision with reference to the claims for interest on arrearages, but offered the argument that such was required to be included to make the present value of the future plan payments equal to the mortgage arrearages due on the date of the bankruptcy." App. at 3. The bankruptcy

court declined to require the payment of interest.

In reviewing the bankruptcy court's order, the district court focused on 11 U.S.C. § 1322(b). Section 1322(b) reflects Chapter 13's permissive approach to reorganization by individual debtors. In particular, § 1322(b)(2)[2] enables a Chapter 13 debtor to modify any creditor's claim, except that of a mortgagee whose claim is secured only by a security interest in the debtor's principal residence. Section 1322(b)(5) makes clear that the prohibition against modification of residential mortgages does not preclude their cure:

> (5) notwithstanding paragraph (2) of this subsection, [the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

The district court concluded that the Capps' proposed cure satisfied § 1322(b)(5).[3] Because the contract did not provide for interest on arrearages, the district court, like the bankruptcy court, declined to require such payments, 71 B.R. 592.

Commonwealth's argument for a contrary result on appeal is based on § 1325(a)(5)(B)(ii). Section 1325 provides:

> (a) ... [T]he court shall confirm a plan if—
>
> *　*　*　*　*　*
>
> (5) with respect to each allowed secured claim provided for by the plan—
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

---

**1.** Section 1322(b)(5) is reproduced in the text, *infra* at p. 774.

**2.** Section 1322(b)(2) provides:
   (b) Subject to subsections (a) and (c) of this section, the plan may—
   *　*　*　*　*
   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the

debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

**3.** As suggested earlier, the final payment on the Capps' mortgage falls due well after anticipated completion of their reorganization plan. Commonwealth did not and does not contend that the arrearages will not be paid "within a reasonable time."

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder;

Commonwealth argues that, despite the absence of a provision in its mortgage providing for interest on arrearages, payment to home mortgagees of the present value of their claims is required by § 1325(a)(5)(B)(ii) if they do not accept the debtor's reorganization plan and have not been given their collateral. Commonwealth maintains that because both preconditions are satisfied here [4] § 1325(a)(5)(B)(ii) necessitates interest payments.

Two Courts of Appeal have addressed the issue whether § 1325(a)(5)(B)(ii), read in connection with § 1322(b)(5), requires interest on arrearages.[5] In *In re Colegrove*, 771 F.2d 119 (6th Cir.1985), a divided panel of the 6th Circuit concluded that § 1325(a)(5)(B)(ii) mandates interest on arrearages. In *In re Terry*, 780 F.2d 894 (11th Cir.1985), the 11th Circuit reached the opposite result, holding that § 1322(b) creates an exception to § 1325(a)(5)(B)(ii) for home mortgages, and thus that § 1325(a)(5)(B)(ii) was inapplicable. For reasons discussed at length hereafter, we agree with *In re Terry* and the dissent in *In re Colegrove* that a mortgagee whose sole security interest is in a debtor's primary residence can not demand interest on arrearages, absent such a provision in the mortgage contract.[6]

## II.

█ Our rejection of Commonwealth's interest claim is dictated in part by this court's recent decision in *Matter of Roach*, 824 F.2d 1370 (3d Cir.1987). In *Roach*, we considered a Chapter 13 debtor's contention that his right to redemption survived both a foreclosure judgment and a foreclosure sale. Necessary to our ultimate conclusion that his right of redemption terminated with the foreclosure judgment was a determination as to whether a debtor who cures a default on a debt instrument can be said to have modified his or her creditor's rights.[7] Based both on the legislative history of § 1322(b) and on analogous provisions elsewhere in the Code, we concluded that Congress did not see cure as effecting a modification of creditors' interests. We pointed out, for example, that the Commission on the Bankruptcy Laws of the United States, which drafted a model act largely adopted by the 1978 Code, "distinguished the authorization to cure defaults on a home mortgage from the power to modify

---

4. It is without dispute that Commonwealth objected to the Capps' reorganization plan, *see* App. at 16, and that Commonwealth has not been given the residence that is subject to its mortgage.

5. The issue has been hotly debated in the bankruptcy courts and district courts. Numerous decisions exist in the Eastern District of Pennsylvania alone. Some have permitted mortgagees to require interest payments on arrearages in the absence of contractual provisions so providing. *See e.g. In re Evans*, 20 B.R. 175 (Bankr. E.D.Pa.1982); *In re Nesmith*, 57 B.R. 348 (Bankr.E.D.Pa.1986); *In re McCall*, 57 B.R. 642 (Bankr.E.D.Pa.1986). Others, including the most recent decisions, have prohibited interest payments. *See e.g. In re Fries*, 68 B.R. 676 (Bankr.E.D.Pa.1986); *In re Martin*, 72 B.R. 126 (Bankr.E.D.Pa.1987); *In re Powell*, 78 B.R. 409 (E.D.Pa.1987); *In re Rice*, 75 B.R. 47 (E.D.Pa. 1987); *In re Robinson*, No. 86–01798G (Bankr.E. D.Pa. June 30, 1987).

6. The Capps argue, as an alternative basis for the conclusion we reach, that state law is con-

trolling and that Pennsylvania law prohibits the payment of interest on mortgage arrearages. Were Commonwealth's contention that § 1325(a)(5)(B)(ii) requires interest payments persuasive, the Supremacy Clause would mandate our rejection of the Capps' position. *See In re Roach*, 824 F.2d 1370, 1373 (3d Cir.1987). Because we agree with the Capps that § 1325(a)(5)(B)(ii) does not require interest on arrearages where interest is not provided for in the contract, however, we need not determine whether Pennsylvania law forecloses such interest payments.

7. In *Roach* the distinction between cure and modification was crucial because debtors would not be able to cure and reinstate home mortgages under § 1322(b)(3) if such cures were deemed modifications, since § 1322(b)(2) prohibits modification of the terms of a mortgage on the debtor's principal residence. Here, on the other hand, the distinction is important in the context of § 1325(a)(5)(B)(ii).

claimants' rights." 824 F.2d at 1375. We also described distinctions between cure and modification made by the House and Senate in their debates with respect to the final form of § 1322(b). In addition, our survey of the history of analogous provisions in Chapter 11, the counterpart for businesses to Chapter 13, revealed that sections 1123 and 1124, which relate to cure in Chapter 11, also distinguish between cure and modification. We noted that "[s]ection 1123 of Chapter 11 and § 1322 of Chapter 13 are parallel provisions," and that it is "very likely that Congress' understanding of the authorization to cure defaults in each was identical." 824 F.2d at 1376.

Section 1325(a), the source of Commonwealth's interest claim, is a cramdown provision that prescribes the conditions under which a Chapter 13 plan may be confirmed over creditors' objections. § 1325(a)(5)(B)(ii) insures present value so as to limit the effects of cramdown. As a leading treatise points out, this is necessary because cramdown enables a debtor to "modify the rights of secured creditors by reducing their payments or in other ways." 5 *Collier on Bankruptcy* ¶ 1322.09[4] (15th ed. 1986) ("*Collier*"). For this reason, we think that a necessary precondition to the application of § 1325(a)(5)(B)(ii) is that the debtor's plan must have effected a modification in the mortgage contract. *See In re Terry*, 780 F.2d 894, 897 (11th Cir.1985); *In re Simkins*, 16 B.R. 956, 963–966 (Bankr.E. D.Tenn.1982). *See also Cheetham v. U.C. I.T.*, 390 F.2d 234, 238 (1st Cir.1968) (pre-Code decision concluding that "[i]f Chapter XIII is to serve any real purpose where there are secured creditors, Section 652 must be read as written, to require assent only of those whose claims are dealt with, meaning expressly adversely dealt with."); 5 Collier ¶ 1325.06[2][b].

The fallacy in Commonwealth's argument inheres in its failure to acknowledge that, because cure under § 1322(b)(5) does not modify creditors' rights, as pointed out by *Roach*, § 1325(a)(5)(B)(ii) is inapplicable

in the context of cure and reinstatement. As *Collier* explains,

> neither the present value test of section 1325(a)(5) nor the best interests of creditors test of section 1325(a)(4) is applicable where a default is cured pursuant to section 1322(b)(5). The present value tests compensate creditors whose rights have been modified by reductions in payments, interest charges or the total amount due; where a default is cured, however, the creditor's rights are not modified. Since the contract terms remain in force (except for the injunction against foreclosure) the time value of money is irrelevant. The creditor receives the interest, charges and costs to which it is entitled under the contract and applicable nonbankruptcy law.

5 *Collier* ¶ 1322.09[4].

As *Collier* acknowledges, this is not to say that a creditor in Commonwealth's position is not adversely affected to some degree by a bankruptcy and a plan of the kind here proposed. In the absence of the bankruptcy and plan, Commonwealth's rights would be subject to the Capps' right of cure only for the cure period stipulated in the contract and Commonwealth could collect its arrearages by foreclosure at the end of that period. With the Capps' bankruptcy and plan, the arrearages will not be fully paid for a period of five years and, as a consequence, the absence of an interest on arrearages provision in the mortgage contract takes on added and more onerous significance for Commonwealth. While we are mindful of this adverse impact produced by the injunction against foreclosure, our responsibility is to fit Sections 1322(b)(5) and 1325(a) together in a way that will effectuate the Congressional intent. We are persuaded, as we indicated in *Roach*,[8] that the incidental adverse effects inherent in cures effected under Section 1322(b)(5) were regarded by Congress as insignificant when compared with the adverse effects of modifications and other aspects of the bankruptcy laws. As the Senate Report concerning the cure provi-

---

**8.** In *Roach*, we addressed the adverse effect of cure on the mortgagees' right of acceleration and concluded that Congress had intended to sanction that effect.

sion under Chapter 11 indicates, Congress felt that "[t]he holder of a claim ... who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain." S.Rep. No. 989, 95th Cong., 2d Sess. 120 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5906, *reprinted in Collier* App. 3. Accordingly, we agree with *Collier* that the present value provision of § 1325(a) does not apply when a default is cured under § 1322(b)(5).

To hold otherwise would be to disrupt the scheme for cure embodied in § 1322(b). Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts. Usually the terms for cure are provided in the contracts themselves; Section 1322(b)(5) preserves such arrangements with respect to long-term mortgages by ensuring that debtors will not be prevented from curing their defaults due to the intervention of bankruptcy. Section 1325(a)(5)(B)(ii) is inconsistent with this scheme because, were § 1325(a)(5)(B)(ii) applicable in the § 1322(b)(5) cure context, it would require debtors to pay interest on their arrearages, even where such payments were not provided for contractually.[9]

Because we conclude that home mortgagees were not the intended beneficiaries of § 1325(a)(5)(B)(ii) and because their treatment, insofar as cures of defaults are concerned, is dictated by the specific provisions of § 1322(b), we will affirm the bankruptcy court's and the district court's conclusion that Commonwealth is not entitled to interest on arrearages owed it.[10]

### III.

We will affirm the order of the district court upholding the decision of the bankruptcy court to deny interest on arrearages.

---

**9.** That § 1322(b)(5) contemplates cure in accordance with contractual terms draws further support from its pre-Code origins. Cure historically was effected outside of bankruptcy because it was not provided for by the old Bankruptcy Act. *See* 5 *Collier* ¶ 1322.09[4]. In the absence of statutory guidance, courts facilitated cure by, first, enjoining foreclosure, and then permitting cure in accordance with nonbankruptcy law and the provisions of the contract. There is no reason to suspect that, with § 1322(b), and in particular § 1322(b)(5), Congress intended to alter this regime. *Id.*

**10.** Commonwealth also argues that denial of interest on arrearages may constitute a taking in violation of the Fifth Amendment. We reject this argument. Our conclusion follows *a fortiori* from our holding in *In re Ashe,* 669 F.2d 105 (3d Cir.1982).