**In re Bruce W. SIEGFRIED,**
**Individually and f/d/b/a**
**CMCS, Inc., Debtor.**

**Bankruptcy No. 89–01146.**

United States Bankruptcy Court,
N.D. New York.

Feb. 7, 1990.

Leon J. DeBernardis, Utica, N.Y., for debtor.

John A. Nasto, Rome, N.Y., for Up State Federal Credit Union.

Warren V. Blasland, Syracuse, N.Y., Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter is before the Court by way of the Objection of a secured creditor, Up State Federal Credit Union ("Up State") to the confirmation of the repayment plan proposed by Bruce W. Siegfried, f/d/b/a CMCS Inc. ("Debtor"). Up State objects mainly to Debtor's failure to provide for payment of interest on arrears pursuant to § 1325(a)(5)(B)(ii) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") during the repayment period.[1]

---

1. Objections to confirmation of Debtor's Plan which have also been filed by RKB Enterprises, Inc. ("RKB") are not considered herein by consent of RKB pending resolution of the amount

## JURISDICTION

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1). This is a core matter under 28 U.S.C. § 157(b)(2)(L).

## FACTS

The Debtor filed his petition for relief pursuant to Chapter 13 of the Code on August 3, 1989. According to his petition, Debtor was in default on the mortgage of his principal residence located at RD 2, West Carter Rd., Rome, New York at the time of filing. Both Up State and the Debtor agree that the amount in arrears is $21,930.37. Debtor originally filed a Plan providing for Up State to be paid the amount in arrears over fifteen months. Up State's objection, however, refers to a twenty-four month repayment period, although no amendment to the original Plan has been filed with the Court.

As the Debtor has not responded to dispute *any* of the facts which Up State has set forth in its Objection or Memorandum of Law, the Court will assume that Up State was provided with an amended Plan which provided for payment of arrears without interest over twenty-four months.

The value of the Debtor's principal residence securing the loan from Up State is set forth in his petition as approximately $140,000.00. Up State does not dispute the Debtor's valuation.

## ARGUMENTS

While Debtor's counsel stated at the motion term held in Utica, New York on October 24, 1989, that the issue of whether interest is payable on arrears which are cured under the Code is "for the Court to decide," he has not availed himself of the opportunity to submit any oral or written response or Memorandum of Law as permitted by the Court.

Up State does not assert that interest on arrearages is provided for, either expressly or impliedly, in the mortgage contract, it-

claimed. As the Court does not at this time pass upon their merits, RKB's Objections are pre-

self. Up State argues that Code § 1325(a)(5)(B)(ii), which requires "present value" in the form of interest to be paid on secured claims, must be applied to the Debtor's arrears regardless of whether Debtor's cure under the Code is viewed as a "modification" of its rights.

Up State further claims that Congress intended interest to be paid on arrears because of language in a Senate Report which indicates that creditors should be restored to their original position. According to its argument, interest on arrearages which are paid over time through the Plan are due under Code § 1325(a)(5)(B)(ii) as an incident to the cure.

Up State also objects to the fact that the Plan does not provide for payment of the balance due on the mortgage after payment of the arrearage. In addition, Up State contends that the Debtor is unable to comply with the payments under the Plan and that the Plan, therefore, lacks feasibility.

Up State does not appear to object to the proposed twenty-four month cure period as "unreasonable" under Code § 1322(b)(5).

## DISCUSSION

The Court agrees with Up State that Code § 1325(a)(5)(B)(ii) contains language which directs that a secured creditor must receive the present value of its claim, i.e., interest or a discount factor must be added to the secured claim if it is to be paid over time. *See United Sav. Ass'n. v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). Up State's contention that Code § 1325(a) mandates compliance with each of its six subdivisions, thus requiring interest to be imposed on the right to cure a pre-petition default pursuant to subsection (5)'s "present value" language, represents one side of a continuing controversy which has resulted in a split among courts on this issue. This Court is not persuaded by the Debtors' argument, however, and holds that payment of the present value of a secured

served for reassertion prior to confirmation.

claim under Code § 1325(a)(5)(B)(ii) is not mandatory where a pre-petition default is to be cured within a reasonable time pursuant to Code § 1322(b)(5).

The Court's decision is based, in part, on the absence of mandatory language in Code § 1325. The language of Code § 1325(a) that "the court shall confirm a plan if" all of the subsections (1) through (6) are met, has been construed to mean that each of those subsections are "sufficient conditions for confirmation of a Chapter 13 plan, but not necessary conditions for confirmation of a Chapter 13 plan." *In re Brady*, 86 B.R. 166, 169 (Bankr.D.Minn. 1988). *See also* 5 COLLIER ON BANKRUPTCY ¶ 1322.01[1] (15th ed. 1989) (citing Code § 1322(a) as the sole mandatory provision of the Code regarding Chapter 13 plans). The Third Circuit, with whom this Court herein concurs, concluded in *In re Szostek*, 886 F.2d 1405, 19 Bankr.Ct.Dec. 1520 (CRR) (3d Cir. October 12, 1989) that the provisions of Code § 1325(a) are not mandatory, and that a court has discretion "to confirm a plan which comports with the mandatory provisions of § 1322, but does not meet the conditions of § 1325(a)(5)(B)(i)–(iii)." *Id.* at 1412, 19 Bankr.Ct.Dec. at 1525. *But see Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982); *In re Trent*, 42 B.R. 279 (Bankr.W.D.Va.1984); *General Motors Acceptance Corp. v. Lefevre*, 38 B.R. 980 (D.Vt.1983).

The language of Code §§ 1322(b)(3) or (5) does not require that present value be provided to creditors holding secured claims on which pre-petition defaults are cured through a plan. Congress is presumed to have intentionally excluded the present value language included in other sections under Chapter 13 from the cure provisions of Code § 1322. *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). The absence of such language indicates Congress' intent that interest is not payable where the debtor is curing a default under subsections (3) or (5) of Code § 1322(b). *In re Kingsley*, 86 B.R. 17, 20 (Bankr.D.Conn.1988); *In re Ridgley*, 81 B.R. 65, 70 (Bankr.D.Ore.1987).

Up State also misinterprets one of the issues discussed by the Third Circuit in *Appeal of Capps*, 836 F.2d 773 (3d Cir. 1987) with respect to Congress' intent, as evidenced in a Senate Report, to restore the holder of a secured claim "to his original position." *Id.* at 777 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 120 (1978)), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5906. Up State interprets the cited language from the Senate Report to support its position that only payment of the present value of the arrearage claim over the repayment period, as "required" by Code § 1325(a)(5)(B)(ii), implied in the language of the Senate Report and, therefore, intended by Congress, will restore it to its original position.

The Senate Report cited by Up State and *Appeal of Capps* was referring to a Chapter 11 creditor who is deemed not to be "impaired" by the curing of a default by a debtor. 11 U.S.C. § 1124(2). The consequence of this under the Code is that the unimpaired creditor is not allowed to vote on acceptance of the Chapter 11 plan. Thus, the Senate Report indicates that the curing of the default, itself, was intended to restore the creditor to its original position. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 120 (1978). Since the curing of a pre-petition default was intended to restore the Chapter 11 creditor to its original position, Up State's reliance upon the Senate Report is contrary to their stated position.

The Third Circuit, in *In re Roach*, 824 F.2d 1370 (3d Cir.1987), observed that Congress intended for the ability and effect of curing a default under Chapter 13 to be analogous to that in Chapter 11. In *Roach*, the court noted that Code §§ 1123 and 1322 are "parallel provisions" and that it was very likely that Congress' intent with regard to curing defaults in each provision "was identical." *Id.* at 1376. Earlier, the Second Circuit, in *In re Taddeo*, 685 F.2d 24 (2d Cir.1982), also concluded that curing a default in Chapter 13 and Chapter 11 are directly analogous. *Id.* at 29. Creditors' rights are deemed either to be "unimpaired" or not "modified" by the curing of default under Chapters 11 and 13, respectively. *Id.* at 27–29. The result is that the

Code does not require those creditors whose defaults are cured under the Code to be compensated with the present value of their claim over a reasonable repayment period within the plan.

In the context of a secured claim holder whose sole security interest is in a debtor's principal residence, some courts have concluded that the creditor cannot successfully object to a plan's confirmation on the grounds that he must be permitted interest on arrearages. The courts in *Appeal of Capps supra*, and *In re Terry*, 780 F.2d 894 (11th Cir.1985) held that Code § 1322(b) creates an exception to Code § 1325(a)(5)(B)(ii) for home mortgages, thus rendering Code § 1325(a)(5)(B)(ii) inapplicable. *Capps, supra*, 836 F.2d at 776 noted that the purpose of Code § 1325(a)(5)(B)(ii) is to insure "present value so as to limit the effects of cramdown." Since the curing of default under Code § 1322(b)(5) is not a "modification" of the mortgage contract, but rather a reinstatement of its terms, the conditions necessary for application of Code § 1325(a)(5)(B)(ii) do not exist. *Id. Appeal of Capps* and other courts have also held that "home mortgagees were not the intended beneficiaries of § 1325(a)(5)(B)(ii)." *Id.* at 777; *In re Colegrove*, 771 F.2d 119, 123 (6th Cir.1985) (Celebrezze, J., dissenting). *But see In re Colegrove*, 771 F.2d 119 (6th Cir.1985); *In re Catlin*, 81 B.R. 522 (Bankr.Minn.1987); *In re Van Gordon*, 69 B.R. 545 (Bankr.D. Mont.1987); *In re Trigwell*, 67 B.R. 808 (Bankr.C.D.Calif.1986); *In re Wilkinson*, 33 B.R. 933 (Bankr.S.D.N.Y.1983).

The Court acknowledges here that curing a default under Code § 1322(b)(2) or (5) is not without adverse economic effects for the creditor. *In re Colegrove*, 771 F.2d 119, 123 (6th Cir.1985) (Celebrezze, J., dissenting). Courts, in reviewing the related legislative materials, have been persuaded that such adverse effects were "regarded by Congress as insignificant when compared with the adverse effects of modifications and other aspects of bankruptcy laws." *In re Capps, supra*, 836 F.2d at 776. This is supported by Congress' recognition that a Chapter 13 creditor may experience some economic loss but that "their losses will be significantly less than if their debtors opt for straight bankruptcy." *Grubbs v. Houston First American Sav. Ass'n.*, 730 F.2d 236, 239 (5th Cir.1984) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin. News, 1978, p. 6079). This also appears consistent with the "overriding rehabilitative purpose of Chapter 13." *In re Taddeo supra*, 685 F.2d at 29.

As for Up State's objection that the Plan does not call for payment of the balance due after payment of the arrearages, the Court recognizes that the Debtor is not relieved of his remaining obligation under the reinstated mortgage agreement by performing his obligations over the limited life of the Plan. Code § 1322(b)(5) provides, however, for the "maintenance" rather than the completion of payments on a "secured claim on which the last payment is due after the date on which final payment under the plan is due." Impliedly, once arrearages are cured and the mortgage reinstated pursuant to Code § 1322(b)(3) and (5), the Debtor must continue to meet his obligations on the balance due under the mortgage, but is not required to complete payment of the secured claim within the life of the Plan. As Debtor's Plan is not yet confirmed and is subject to further amendment depending upon the outcome of pending objections to the Plan's confirmation, the Court will take cognizance of Up State's objection regarding payment of the balance due and allow it to be preserved for reassertion at a later date, if appropriate.

Concerning Up State's assertion that Debtor has not made the proposed payments under the Plan and that he, therefore, is unable to meet his proposed obligations to Up State, the Court has not been provided sufficient information to support a finding in this matter. In view of the fact that the Plan is not confirmed at this time, any objection on grounds of feasibility which Up State may wish to assert at a later point, will also be heard at that time.

Based upon the foregoing review of case law and legislative history, the Court con-

cludes that interest is not payable on arrearages which are cured pursuant to Code § 1322(b)(3) or (5) within a Chapter 13 repayment plan.

Accordingly, it is hereby,

ORDERED, that Up State's Objection with regard to the payment of interest on arrears is dismissed with prejudice; and it is further

ORDERED, that Up State's Objection as to a provision in the Debtor's Plan for payment of the balance due after payment of arrearages, as well as the feasibility of the Plan, are adjourned to the date of any subsequent confirmation hearing held herein.