**In re Leroy Calvin HALL and Versailene Hall, Debtors.**

**Bankruptcy No. IP89–6729WP V.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

July 16, 1990.

William L. Price, Indianapolis, Ind., for debtors.

Douglas J. Hannoy, Feiwell & Associates, Indianapolis, Ind., for Lomas.

RICHARD W. VANDIVIER, Bankruptcy Judge.

This matter comes before the Court on the Debtors' Objection to Secured Claim of Lomas Mortgage USA ("the Objection to Claim"), filed by the Debtors on November 13, 1989, and on the Objection to Chapter 13 Plan ("the Objection to Plan") filed by Lomas Mortgage USA, Inc. ("Lomas") on November 7, 1989. The matters were heard on December 27, 1989. The Court now overrules the Objection to Claim and sustains the Objection to Plan on the following findings of fact and conclusions of law.

### Findings of Fact

1. On September 15, 1989, the Debtors filed for relief under Chapter 13 of the Bankruptcy Code, and on October 3, 1989, they filed a Chapter 13 Plan ("the Plan"). The Plan stated that Lomas held a first priority consensual lien on the Debtors' residential real property and provided that the Debtors would resume current payments and cure through plan payments a prepetition arrearage shown to be $3500.00. The Plan further provided for allowance of any reasonable fees, attorney fees, costs or charges provided for under the agreement between the parties, but no postpetition interest unless specifically provided for in the mortgage instrument.

2. On November 6, 1989, Lomas filed a Proof of Secured Claim, in which Lomas claims that the Debtors have made no payments since the one due August 1, 1988, that Lomas had a default judgment against the Debtors entered on May 8, 1989, by the Marion Superior Court, Cause No. 49D04–8901–CP–0032, and that Lomas asserted a claim against the Debtors in the amount of $15,091.07, consisting of:

| | |
|---|---|
| Unpaid principal balance as of November 15, 1989 | $10,773.12 |
| Interest from August 1, 1988, through May 7, 1989 (at 7%) | 581.67 |
| Interest from May 8, 1989 through November 1, 1989 (at 10%) | 522.15 |
| Judgment Attorney fees | 1,500.00 |
| Bankruptcy Attorney fees | 300.00 |
| Accrued Late Charges | 52.86 |
| Escrow Deficit | 915.79 |
| Title Work | 230.00 |
| Filing Fees | 55.00 |
| Telephone | 15.00 |
| Postage | 10.00 |
| Copying | 50.00 |
| Sales Cancellation Fee | 73.48 |
| Inspection Fees | 12.00 |

Lomas further stated that the Debtors owe prepetition arrearages of $5,847.13 and a postpetition arrearage of $203.00.

3. In the Objection to Plan, Lomas objects that the Plan shows the prepetition arrearage to be $3500.00 instead of $5,847.13. In the Objection to Claim, the Debtors assert that Lomas is not entitled to postpetition interest on the prepetition arrearage, citing 11 U.S.C. section 1322(b)(2). At the hearing, the parties agreed that there were no contested issues of fact regarding the figures in Lomas's proof of claim, and that the only issue was the allowability and treatment of the amounts claimed. Although counsel for the Debtor indicated at the hearing that there was disagreement the allowability of certain items in the proof of claim, the parties have briefed only the issue of the allowability of postpetition interest on prepetition arrearages. The Court, therefore, will address only this issue.

### Conclusions of Law

1. The Court has jurisdiction over this matter as a core proceeding. *See* 28 U.S.C. section 157(b)(2)(B) and (L).

2. To the extent that an allowed secured claim is oversecured, the holder shall be allowed postpetition interest on such claim. 11 U.S.C. section 506(b). Interest is allowed even if it is not provided for by agreement between the debtor and claimant. *See United States v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

3. To be confirmed, a Chapter 13 plan must, with respect to each allowed secured claim, provide that the holder of the claim retain the lien securing the claim and and that the holder of the claim receive the value, as of the effective date of the plan, of property to be distributed under the plan that is not less than the amount of the claim (unless the holder of the claim has accepted the plan or the debtor surrenders the collateral). 11 U.S.C. section 1325(a)(5). A plan may meet this "cramdown" requirement by providing for interest on an allowed secured claim, so that the payments over the life of the plan equal the present value of the claim. *See* 5 Collier on Bankruptcy para. 1325.06[4][b][iii][A]. Providing such "present value interest" is the most common method of meeting the present value requirement.

4. These two sections address related but distinct concepts. Section 506(a) states, in simple terms, that the value of an allowed secured claim is no more than the value of the collateral securing it, any claim in excess being an unsecured claim. If the value of the collateral is more than the value of the claim, the entire claim is secured, and section 506(b) allows postpetition interest on these oversecured claims. The value of the secured claim may vary during the course of a bankruptcy because of such things as payments made on the claim and fluctuations in the value of the collateral. *See* 3 Collier on Bankruptcy para. 506.04[1]. If postpetition interest is allowed, the value of the secured claim will increase as the interest accrues, up to the value of the collateral. Thus, section 506 provides a method for valuing an allowed secured claim at any given time during a bankruptcy case.

5. In contrast, section 1325(a)(5) requires that the holder of each secured claim, regardless of whether the claim is oversecured, receive the value of the secured claim as determined as of the effective date of the plan. In evaluating a Chapter 13 plan, section 506(b) determines the allowability of postpetition interest in valuing an allowed secured claim as of the effective date of the plan, while section 1325(a)(5) requires the plan to provide the present value of that secured claim, usually through present value interest, as of that date. *See In re Corliss*, 43 B.R. 176 (Bankr.D.Ore.1984). In rough terms, the issue of postpetition interest is governed by section 506(b) from the date of the petition to the effective date of the plan and by section 1325(a)(5) thereafter.

6. The Debtors do not dispute that the claim of Lomas is oversecured, so interest is allowable under section 506(b), whether or not the contract explicitly allows for such interest, from the petition date through the effective date of the plan.

7. If 1325(a)(5) were the only provision bearing on the issue of present value interest, there would be little dispute that Lomas would be entitled to such interest on the prepetition arrearage the Debtors want to pay over the life of their Plan. The Debtors argue, however, that this section is subject to the provision that a Chapter 13 plan may modify the rights of a holder of a secured claim, *except* the rights of a holder of a claim that is secured only by a security interest in real property that is a debtor's principal residence (for simplicity, "a home mortgage lender"). *See* 11 U.S.C. section 1322(b)(2). The Debtors contend, and Lomas does not dispute, that Lomas is a home mortgage lender and would have no contractual right to interest on arrearages. The Debtors therefore argue that their Plan need not (indeed could not) provide for such interest because doing so would impermissibly modify Lomas's contract rights.

8. In the Debtors' support are two courts of appeal. *See In re Capps*, 836 F.2d 773 (3d Cir.1987); *In re Terry*, 780 F.2d 894 (11th Cir.1985). The Sixth Circuit, in contrast, has held that the present value requirement of section 1325(a)(5) is applicable even if the contract rights cannot be modified under section 1322(b)(2), relying in part on what it perceived to be the majority of lower court decisions. *See In re Colegrove*, 771 F.2d 119, 122 (6th Cir.1985). That court found that present value interest on a prepetition arrearage is not an impermissible contract modification under section 1322(b)(2), but a cure allowed by section 1322(b)(5), which provides that notwithstanding subsection 1322(b)(2), a plan may provide for the curing of any default within a reasonable time and for maintenance of payments while the case is pending on any claim on which the last payment is due after the final plan payment is due. *Id.*

9. For the following reasons, the Court finds that applying the present value requirement to claims held by home mortgage lenders is in more accord with the language and the structure of Chapter 13 in general and with the purpose of section 1322(b)(2) in particular. First, interpreting the present value requirement as a component of a permissible cure rather than a forbidden contract modification gives effect to all relevant sections of the Code. A contrary interpretation would put the provision that the holder of an allowed secured claim be given the present value of its claim in direct conflict with the provision forbidding modification of a home mortgage lender's contract rights. Allowing present value interest as a component of curing a default rather than a modification of contract rights, however, harmonizes these provisions.

10. Second, the primary purpose of section 1322(b)(2) is to provide stability in the residential long-term home financing industry and market. *See In re Brantley*, 6 B.R. 178, 189 (Bankr.N.D.Fla.1980). This section is intended to protect home mortgage lenders rather than home owners. *See In re Seidel*, 752 F.2d 1382, 1985 (9th Cir.1985). Moreover, unlike in Chapter 11, a creditor may not propose a plan, *compare* 11 U.S.C. sections 1121 and 1321, so any limitations on plan provisions must be for the benefit of creditors rather than the debtor. Thus, section 1322(b)(2) protects the rights of home mortgage lenders from such contract modifications as lowering the amount of the monthly payments or the contractual interest rate, which would otherwise be permissible, *see In re Ramirez*, 62 B.R. 668 (Bankr.S.D.Cal.1986). Interpreting this section to deprive home mortgage lenders of present value interest to which they would otherwise be entitled under section 1325(a)(5) would harm rather than protect these lenders, and thus would be contrary to the purpose of section 1322(b)(2). The Court will not interpret a Code provision in a way that is contrary to its purpose when there is an equally, indeed more, supportable interpretation that furthers its purpose.

11. Third, in a bankruptcy case, the cure rights of mortgagees, including home mortgage lenders, are governed by federal rather that state law. *See In re Taddeo*, 685 F.2d 24, 28–29 (2d Cir.1982). Courts that have disallowed present value

interest have concluded that no interest may be allowed unless the mortgagee would have an right to interest as part of the cure under its contract with the debtor or under state law. *See Capps*, 836 F.2d at 777; *Terry*, 780 F.2d at 897. However, federal bankruptcy law has already disrupted the mortgagee's cure rights by staying foreclosure, *see* 11 U.S.C. section 362(a), which the mortgagee could have resorted to in the absence of a speedy cure. (This indeed is a "modification" of the home mortgage lender's contract rights, but one that is not barred by section 1322(b)(2) because it is the Code itself, not the plan, that effects the modification.) Section 1322(b)(5) gives the debtor the right to cure defaults through a plan while the automatic stay prevents foreclosure, and section 1325(a)(5) defines what that cure must provide the mortgagee to make up for the loss of its right to speedy foreclosure. Thus, the fact that a mortgagee may have no state law or contract right to interest on arrearages does not affect its right to present value interest under the Code.

■ 12. Fourth, the Court disagrees with the position that the present value requirement of section 1325(a)(5) is inapplicable when contract rights have not been modified under section 1322(b)(2). *See Capps*, 836 F.2d at 776–77; *In re Laguna*, 114 B.R. 214 (9th Cir. BAP 1990). This position is based in part on the reasoning that since, in Chapter 11, only members of an impaired class of secured creditors would be entitled to the the present value of their claim in a cramdown, *see* 11 U.S.C. section 1129(b)(2)(A)(i), and a plan may render claims unimpaired by reinstating the contract terms and curing defaults without the present value requirement, *see* 11 U.S.C. section 1124(2), therefore a Chapter 13 plan that cures a default without otherwise modifying a secured creditor's contractual rights is not subject to the present value requirement. This reasoning is flawed for three reasons. First, the concept of impaired or unimpaired classes is embedded in the complexities of Chapter 11 and has no application in other chapters. *See* 11 U.S.C. section 103(f). Second, the

prevailing authority is that to render a class unimpaired under section 1124, cure must be made on the effective date of the plan rather than over time through the plan, so a claim in fact would be impaired and the creditor entitled to present value interest if the Chapter 11 plan proposed cure over time. *See In re Jones*, 32 B.R. 951 (Bankr.D.Utah 1983); 5 Collier on Bankruptcy para. 1124.03[4]. Third, this argument proves too much, since it would deprive not just home mortgage lenders but all secured creditors of present value interest on arrearages (unless the contract or state law allowed it), as long as the contract terms are not modified under section 1322(b)(2). This may have been the practice under the old Act, *see* 5 Collier on Bankruptcy para. 1322.09[4], but the plain provisions of the Code take precedence over past practice. The Chapter 13 present value provision of section 1325(a)(5) applies by its terms to all holders of secured claims, whether or not they would be impaired in Chapter 11, whether or not they are home mortgage lenders, and whether or not their contracts rights have been modified under section 1322(b)(2).

13. Because the Debtor now admits to the figures in Lomas's Proof of Claim, Lomas's Objection to Plan must be sustained. Because the Court concludes that Lomas is entitled to present value interest, the Debtor's Objection to Claim must be overruled. Those matters having been decided, the Court will set for final hearing other pending matters. The Court will refrain at this point from setting a deadline for the Debtors to amend their Plan because resolution of the other pending matters may require further amendment.

The Court therefore OVERRULES the Debtors' Objection to Claim, SUSTAINS Lomas's Objection to Plan, and sets the following matters for final hearing: (1) Objection to Confirmation of Debtor's Plan, filed on November 13, 1989, by the Internal Revenue Service, (2) Objection to Claim of Internal Revenue Service, filed by the Debtors on January 3, 1990, and Motion for

Relief from Stay, filed on January 19, 1990, by Lomas.

SO ORDERED.