**In re Mike and Carmen Angela CHAVEZ, Debtors.**

**Bankruptcy No. 13–91–12434 RA.**

United States Bankruptcy Court,
D. New Mexico.

April 15, 1992.

James Nye, Albuquerque, N.M., for debtor.

Michael Daniels, Albuquerque, N.M., for Talman Mortg.

Steve Mazer, trustee.

## MEMORANDUM OPINION

STEWART ROSE, Chief Judge.

This matter is before the Court on an objection by the creditor, Talman Mortgage Company (Talman) to confirmation of the debtors' Chapter 13 plan. The debtors' plan is intended primarily to save their home. The debtors propose to pay the first, second, and third mortgagees usual and regular payments called for by the mortgages outside the plan, and treat the arrearages owed to the mortgagees under the plan.[1] The debtors plan provides for payments of $109.00 per month for fifty-four months to cure arrearages owed to the mortgagees which total $4,213.00. The house in question is valued at $109,000 and the three mortgages equal $80,101.90. Talman, the first mortgagee, is fully secured.

The plan does not propose to pay interest on the arrearages, and Talman objects to confirmation on this basis, asserting that as a fully secured creditor it is entitled to interest on the arrearage, based on 11 U.S.C. § 506(b) and § 1325(a)(5)(B)(ii) (1979). The debtors contend that payment of interest on arrearages is an impermissible modification of the mortgage contract prohibited by 11 U.S.C. § 1322(b). Finally, the Chapter 13 trustee agrees with the debtors that interest should be denied but for a different reason. The Trustee asserts that the allowance of interest on arrearages is controlled by the underlying mortgage contract, and in this case presumably there is no contract provision for interest on arrearages. The Court finds Talman's objection is well taken, and that

---

1. Given that the last payment of the debtors' thirty-year mortgage will be in June of 2009, the debtors cannot treat the principal of the mortgage under the plan because a plan cannot extend beyond five years. *See* 11 U.S.C. § 1322(c). The debtors may, however, treat the arrearage under the plan as discussed within this opinion.

to confirm their plan the debtors must provide Talman with interest on its arrearage.

The Court gingerly approaches this opinion because of the split of authority in the circuit courts, and an even more unsettled flux of reasoning in the bankruptcy courts. Further, a recent Supreme Court decision, *United States v. Ron Pair Enterprises Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) provides guidance on this issue which has thus far been widely overlooked. Each of these problems will be addressed below, and for the reasons following, the Court follows the Sixth Circuit's decision in *In re Colegrove*, 771 F.2d 119 (6th Cir.1985) which requires interest to be paid on arrearages.

██ The question presented is whether a fully secured creditor is entitled to interest on an arrearage treated under a Chapter 13 plan. Analysis of this issue involves three sequential sections of the Bankruptcy Code which are interrelated.

Starting at the beginning, one must determine the nature of Talman's claim. The answer is found in Chapter 5 of the Bankruptcy Code, which as an "omnibus" chapter applies to Chapters 7, 11, 12, and 13. 11 U.S.C. § 103(a), *see also*, 11 U.S.C. § 1325(a)(1) (plan must comply with applicable provisions of Title 11). Before delving into Chapter 13 it is necessary to interpret Chapter 5 which defines Talman's Chapter 13 claim. In bankruptcy a creditor is entitled to its "allowed" claim, and a claim will be deemed allowed unless objected to. 11 U.S.C. § 502(a). An allowed claim is only secured to the extent of its value, and is unsecured to the extent the value "is less than the amount of such allowed claim". 11 U.S.C. § 506(a).[2] Claims are routinely valued in bankruptcy

and bifurcated into secured and unsecured portions. *See, Ron Pair*, 109 S.Ct. 1026, 1029 at n. 3. In this case no bifurcation is necessary because the value of the property exceeds Talman's claim. Finally, because Talman is fully secured, 11 U.S.C. § 506(b) is triggered which mandates for fully secured claims there "shall be allowed … interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b).

The Supreme Court addressed § 506(b) in *Ron Pair*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). At issue in *Ron Pair*, was whether the IRS, an oversecured creditor, was entitled to postpetition interest on its nonconsensual claim. *Id.*, 109 S.Ct. at 1028. The Court granted certiorari to resolve a conflict among the circuits over distinctions between consensual and nonconsensual liens. *Id.* at 1029.

The Court held that an oversecured creditor was entitled to postpetition interest regardless of the consensual or nonconsensual nature of its claim. *Id.* at 1031. In doing so the Court resolved the circuit conflict, and clarified the plain meaning of § 506(b). The Court found that the determination of the § 506(b) dispute "begins where all such inquiries begin: with the language of the statute itself." *Id.* at 1030 (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985)). The Court deciphered the phrase "there shall be allowed to the holder of such claim, interest on such claim," and held that "such claim" referred to an oversecured claim, and in these claims "[r]ecovery of postpetition interest is unqualified." *Id.*[3]. Further, the Court held that the language and punctuation of

**2.** This section sets forth:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is

less than the amount of such allowed claim…." 11 U.S.C. § 506(a).

**3.** The Court also interpreted the second phrase "and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." As to this phrase the Court held that "recovery of fees, costs and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose." *Ron Pair*, 109 S.Ct. 1026, 1030.

Congress could not be read any other way." *Id.,* 109 S.Ct. at 1031.

Having determined that Talman is fully secured and entitled to interest under § 506(b) and the Supreme Court's interpretation thereof, the next step is to turn to Chapter 13. Under Chapter 13 a wage earner who owes not more than $100,000 in unsecured debts and $350,000 in secured debts may propose a "plan" to pay off those debts. 11 U.S.C. § 109(e). Section 1322 of the Bankruptcy Code specifies the "Contents of Plan". Subsection 1322(a) sets forth what a plan "shall" contain, and subsection 1322(b) states what a plan "may" contain. At issue in this case is what the debtors' plan *may* do to the creditor's claim for interest under 11 U.S.C. § 1322(b)(2) and (b)(5).

■ Section 1322(b)(2) allows a debtor to modify the rights of some secured claims, "other than a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2). Thus, claims secured by the debtor's primary residence are excepted from modification under the Code. Despite this, the debtor may also "provide for the curing of any default within a reasonable time" of a secured claim where the last payment falls due beyond the life of the plan. 11 U.S.C. § 1322(b)(5). Often mortgages secured by the debtor's primary residence extend beyond the life of the plan, as is the case here. *See supra* note 1. Therefore, the debtors cannot "modify" this mortgage but they can "cure" it. As explained below, an entire body of law dances around the apparent inconsistency of these two terms with little direction, agonizing over whether a debtor's cure is an "impermissible modification".

■ The last Code provision in this tripartite analysis is 11 U.S.C. § 1325 which provides for "Confirmation of the Plan." This sets forth what the court "shall" confirm "if" the debtor complies with certain requirements. 11 U.S.C. § 1325(a). A court can only confirm a plan if the debtor meets the essential elements specified in § 1325. Particular to this case is 11 U.S.C. § 1325(a)(5) which addresses allowed secured claims. Three alternatives are possible. The allowed secured creditor can accept the plan. 11 U.S.C. § 1325(a)(5)(A). The debtor can surrender the property. 11 U.S.C. § 1325(a)(5)(C). In the absence of acceptance or surrender, the final possibility is "cram down" which forces a plan on an allowed secured creditor. 11 U.S.C. § 1325(a)(5)(B). Cram down contains two elements. First, the secured creditor is entitled to retain the lien on its claim. 11 U.S.C. § 1325(a)(5)(B)(i). Second, the Code provides that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). This requires the court to "ascertain the then *present value* of the property *to be distributed.*" 5 Collier on Bankruptcy, ¶ 1325.06 (emphasis in original). Property to be distributed under the plan may include deferred payments from the future earnings or income of the debtor. *Id.* Under the Chapter 13 plan Talman is to receive deferred payments from the debtor's future earnings to pay off the arrearage. Therefore, Talman claims it is entitled to interest under § 1325(a)(5)(B)(ii) as well as § 506(b).

In the bankruptcy courts a disparity of opinion exists over the resolution of this issue and it is impossible to find a clear line of authority. Some courts look to the underlying mortgage contract to determine if interest is allowed. *See e.g., In re Thompson,* 127 B.R. 717 (Bankr.D.Conn.1991); *In re Murray,* 116 B.R. 307 (Bankr.M.D.Ga.1990); *In re Penick,* 108 B.R. 776 (Bankr.W.D.Okla.1989); *In re Stamper,* 84 B.R. 519 (Bankr.N.D.Ill.1988). In direct contradiction, other courts hold that interest should be allowed independent of the contract. *See e.g., In re Parker,* 125 B.R. 479, 483 (Bankr.W.D.Tex.1991); *In re Hall,* 117 B.R. 425 (Bankr.S.D.Ind.1990); *In re McCall,* 57 B.R. 642 (Bankr.E.D.Penn.1986); *In re Webb,* 29 B.R. 280 (Bankr.E.D.N.Y.1983). To add to the confusion, where interest is allowed, other courts too numerous to mention, haggle over which rate of interest, contract, mar-

ket or statutory should be used. Not surprising one court threw up its hands and held that *no* Bankruptcy Code provision was applicable to this issue and decided the matter based entirely on Pennsylvania state law. *In re Small,* 65 B.R. 686 (Bankr.E.D.Pa.1986).

The Tenth Circuit has not addressed this issue. Other circuit courts have cast varying interpretations on the three-part analysis set forth above but the lines are more clearly drawn than in the bankruptcy courts. Given the flux in the bankruptcy courts the resolution of this issue primarily focuses on the circuit court decisions. The analysis which most adheres to the Bankruptcy Code, and which this court follows, is *In re Colegrove,* 771 F.2d 119 (6th Cir. 1985).

In *Colegrove,* the debtor who was delinquent on his mortgage payments filed bankruptcy to stave off foreclosure by the mortgagee. *Id.* at 120. The debtor proposed a plan to pay the arrearages, but without interest. *Id.* The bankruptcy court confirmed the plan on the basis that there was no specific clause in the mortgage contract providing for interest on the arrearage and reasoned 11 U.S.C. § 1322(b) prohibited modification of the mortgage contract. *Id.*

■ On appeal, the Sixth Circuit rejected the bankruptcy court's reasoning that was based on modification of the mortgage and held that no modification occurred because the "interest requirement was only incident to cure." *Id.* at 122. More importantly, the Sixth Circuit adopted a different approach and held that "both sections 506(b) and 1325(a) indicate that interest is allowable." *Id.* Specifically, the court held that § 1325(a) "directs the bankruptcy court to confirm a plan *only* where the creditor will receive the present value of the amount due him." *Id.* (emphasis added).

■ The *Colegrove* opinion follows the three-part analysis set forth above, does not skip over imperative Code sections, and adheres to the rule that "[s]tatutory construction is a holistic endeavor." *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Inc.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (construing Bankruptcy Code). Further, *Colegrove*'s interpretation of 11 U.S.C. § 1325(a) is correct. As noted above, modification and cure are what the debtor "may" propose, however, the court "shall" only confirm a plan which complies with § 1325(a). The debtor may mold any plan it desires so long as it fits within the structure of § 1325(a). By recognizing this, *Colegrove* does not stray from the plain language of the Code which the Supreme Court has often indicated is the most appropriate interpretation. *See, Ron Pair, supra; Connecticut National Bank v. Germain,* —— U.S. ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("cardinal canon" is that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *Union Bank v. Wolas,* —— U.S. ——, 112 S.Ct. 527, 528, 116 L.Ed.2d 514 (1991) (what Congress may have intended insufficient to overcome plain meaning); *Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991) (plain meaning of § 109(d) disposed of the issue); *Central Trust Company v. Official Creditors Committee of Geiger Enterprises, Inc.,* 454 U.S. 354, 357, 102 S.Ct. 695, 696, 70 L.Ed.2d 542 (1982) (plain meaning was "unequivocal" and exception to it was "wholly judicial creation").[4]

*Colegrove,* was the first circuit to decide this issue. Four subsequent circuits rejected *Colegrove. In re Laguna,* 944 F.2d 542 (9th Cir.1991); *Landmark Financial Services v. Hall,* 918 F.2d 1150 (4th Cir.1990);

---

4. The Court is not unaware of Supreme Court decisions which utilize a policy driven rationale. *See e.g., Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (rationale of decision looked not to plain language but to pre-Code law). *Dewsnup* considered § 506(d) but this has no bearing on § 506(b) for the Supreme Court limited its holding to § 506(d) and stated "we express no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." *Dewsnup,* 112 S.Ct. at 773. The Supreme Court in *Ron Pair* interpreted § 506(b) based on a plain meaning interpretation, and this Court will not ignore that holding.

*Appeal of Capps,* 836 F.2d 773 (3rd Cir. 1987); *In re Terry,* 780 F.2d 894 (11th Cir.1986). Ordinarily this Court would hesitate to follow a minority, but the cases in the majority merely follow one another and rely on judicial interpretations which ignore the Code. The analysis of *Colegrove* has not been eroded by subsequent precedent for each circuit decision is flawed in some way. It is important to point out these flaws.

The first circuit court to address this issue after *Colegrove* was *In re Terry,* 780 F.2d 894 (11th Cir.1985). In *Terry,* the Eleventh Circuit held that a fully secured claimant was not entitled to interest on an arrearage unless the underlying mortgage contract provided for it. *Id.* at 895. The creditor's argument for interest was based solely on cram down. *Id.* at 896. The court held that the cram down section was simply "inapplicable" to residential mortgages because legislative history indicated that 11 U.S.C. § 1322(b) created a special exception to cram down. *Id.* at 896–97. Further, the court found that the cram down was limited in that it only applied to rapidly depreciating assets. *Id.* at 897 (citing *In re Simpkins,* 16 B.R. 956, 963–66, 6 C.B.C.2d 1081, 1089–92 (E.D.Tenn.1982)). The citation to legislative history is unclear and without merit.[5] *Terry* therefore created an exception to § 1325 cram down which is without support in the Code or legislative history.

In *Appeal of Capps,* 836 F.2d 773, the Third Circuit relied on the *Terry* decision and went one step further and held that "a *necessary precondition* to the application of § 1325(a)(5)(B)(ii) is that the debtor's plan must have effected a modification in the mortgage contract." *Id.* at 776 (emphasis added). According to the Third Circuit, modification does not occur when the debtor cures a mortgage under § 1322(b)(2) because the rights under the mortgage contract, except foreclosure, are left intact. *Id.* (citing 5 Collier ¶ 1322.09[4] ). Because modification does not occur when a cure is

effected, the present value test of the cram down section is "irrelevant." *Id.*

▪ *Appeal of Capps,* is misguided for two reasons. First, it inserts the "necessary precondition" of modification into 11 U.S.C. § 1325(a)(5)(B)(ii) beyond the language of Congress. Moreover, the attempt to define the meaning of modification is misplaced. This decision, like many others focuses too keenly on the distinction between modification and cure. *See e.g. Grubbs v. Houston First American Savings Association,* 730 F.2d 236 (5th Cir. 1984). The Third Circuit conceded a creditor could be "adversely affected" by cure. *Appeal of Capps,* 836 F.2d 773, 776. Apparently being adversely affected is distinct from modification. These fine distinctions need not be made. Rather, the resolution lies in the Code. The trepidation with which courts approach modification is unfounded. Modification is perfectly acceptable under the Code for a creditor can consent to any plan, even when the plan modifies the creditor's rights. 11 U.S.C. § 1325(a)(5)(A). Where the creditor is satisfied and consents there is no need for further scrutiny by the court. 5 Collier on Bankruptcy, ¶ 1325.06. Second, where the creditor does not consent, cram down will be used under 11 U.S.C. § 1325(A)(5)(B). In the nonconsensual situation of cram down the focus of the court should not shift back to what a plan "may" provide under 11 U.S.C. § 1322(b)(2) and (b)(5). The focus should remain with what "must" be complied with for the plan to be confirmed; the lien must be retained, and present value must be given. 11 U.S.C. § 1325(a)(5)(B)(i) and (ii).

▪ The next two cases *Landmark Financial Services v. Hall,* 918 F.2d 1150 (4th Cir.1990), and *In re Laguna,* 944 F.2d 542 (9th Cir.1991), follow the holdings of *Terry* and *Appeal of Capps,* which focus on modification and this Court disagrees to the same extent discussed above. The

---

**5.** Presumably the court was relying on *In re Simpkins,* 16 B.R. 956 (Bankr.E.D.Tenn.1982), which in turn relied on a 1973 Commission Report, cited in the opinion at footnote 1. This

excerpt only addresses debts secured by the debtor's personal property and undersecured creditors. Section 1325 is not mentioned.

Court further disagrees with *Landmark* and *In re Laguna* for they were decided after *Ron Pair*, 109 S.Ct. 1026, yet chose to ignore the Supreme Court's ruling. *Landmark* noted the "broad language" of *Ron Pair*, but found it "inapplicable" because "cure occurs outside the ambit of the Code." *Landmark*, 918 F.2d. 1150, 1155. Further, the *Landmark* court held "valuation of the claim or the collateral is simply immaterial when the original agreement is reinstated and the debtor elects to make all the payments called for by the agreement." *Id. In re Laguna*, agreed with this analysis. *In re Laguna*, 944 F.2d 542, 545. Section 506 valuation is not "immaterial" in Chapter 13. To selectively *ignore* valuation in Chapter 13 violates the plain language of 11 U.S.C. § 103(a) which makes Chapter 5 of the Bankruptcy Code applicable in Chapters 7, 11, 12 and 13. A Chapter 13 plan must comply with all applicable provisions of Title 11, including § 506(b). 11 U.S.C. § 1325(a)(1).

Cure of arrearages under Chapter 13 is often attempted. The Court has preserved the creditor's right to interest as it is set forth under the Bankruptcy Code, instead of modifying it by judicial fiat. The clear delineation of the rights of the debtor and creditor as set out in this opinion will serve to avoid litigation over this issue in the future and foster a more efficient Chapter 13 process.

For the foregoing reasons confirmation of the debtors' chapter 13 plan is denied. Although Talman objected to the reasonableness of the period to cure the default, the court does not rule on this matter because it was not briefed. The debtors may modify their plan in accordance with this opinion and pursuant to 11 U.S.C. § 1323. This memorandum opinion constitutes the Court's Findings of Fact and Conclusions of Law. F.R.Bankr.P. 7052. An appropriate order shall enter.