**LANDMARK FINANCIAL SERVICES, Plaintiff–Appellee,**

v.

**Marvin Junior HALL; Linda Marie Hall, Defendants–Appellants,**

**Virginia Federal Savings Bank, Amicus Curiae.**

**LANDMARK FINANCIAL SERVICES, Plaintiff–Appellee,**

v.

**Elton MORGAN, Jr.; Linda Patricia Morgan, Defendants–Appellants,**

**Virginia Federal Savings Bank, Amicus Curiae.**

Nos. 90–2312, 90–2313.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1990.

Decided Nov. 16, 1990.

As Amended Dec. 6, 1990.

---

Richard G. Poinsett, Hampton, Va. (argued), for defendants-appellants.

Robert Bruce Hill, Hill & Rainey (argued), Petersburg, Va., for plaintiff-appellee.

Paul K. Campson, Ellen C. Carlson, Kaufman & Canoles, P.C., Norfolk, Va. (on brief), for amicus curiae.

Before POWELL, Associate Justice, Retired, United States Supreme Court, sitting by designation, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.

K. K. HALL, Circuit Judge:

In each of these cases, the debtors appeal the district court's order reversing the bankruptcy court and holding that the wage earner plans submitted by the debtors in their respective Chapter 13 proceedings must include provisions for the payment of postpetition interest on mortgage arrearages. Finding that the district court erred, we reverse and remand for further proceedings.

I.[1]

In 1986, Elton Morgan and his wife, Linda Patricia Morgan, borrowed $25,547.08 from Landmark Financial Services ("Landmark") and executed a second deed of trust on their residence to secure repayment of the loan. On February 14, 1989, the Morgans filed a petition for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 1301 *et seq.*). Their petition admitted that they were eight payments in arrears to Landmark as of the date of filing. Each payment in arrears included principal and interest. Their wage-earner plan proposed to pay Landmark the accrued prepetition arrearage, including the interest component of the missed payments, in full over the 36–month life of the plan, while also providing for the resumption of regular monthly payments to Landmark outside the

---

1. The bankruptcy court consolidated the Halls' and the Morgans' cases for the purpose of determining the single issue involved in this appeal. Likewise, the district court considered both appeals together and disposed of both cases in a single order. Because there are no material differences between the facts of each case, only the facts of the Morgans' case are set forth in our opinion.

plan. At issue is the plan's provision to cure the default to Landmark without the payment of interest on the prepetition arrearages.

Landmark objected to confirmation of the plan because the plan did not provide for interest on the delinquent payments. The bankruptcy court ruled that such interest on mortgage arrearages was not required for confirmation of a wage-earner plan "unless the additional interest is provided for by the loan documents." *In re Morgan,* 106 B.R. 449, 450 (Bankr.E.D.Va. 1989). The court found that the Morgans' loan agreement with Landmark did not so provide. Accordingly, the objection was overruled and the plan was confirmed. *Id.* Landmark appealed, and the district court reversed, holding that "Landmark is entitled to recover interest on the mortgage payments in arrears from the time they became due until the time of actual payment." *Landmark Financial Servs. v. Hall,* CA–89–166–NN, CA–89–167–NN (E.D.Va. Dec. 29, 1989), slip op. at 3. The debtors appeal from this order.

## II.

On appeal, the debtors contend that because the mortgage agreement with Landmark makes no provision for interest on missed payments, to require such interest would amount to a prohibited modification of the agreement. Landmark makes a two-pronged argument. First, postpetition interest is required for all oversecured claims. Second, interest on the arrearages does not modify the mortgage agreement but, rather, is incidental to the cure and necessary to give Landmark full value for its claim. Amicus curiae adds the additional argument that federal and state contract law mandates the payment of interest on the arrearages. We turn first to the concept of "cure."

## III.

The district court relied upon several sources to find an entitlement to interest on the mortgage arrearages: state and federal contract law, 11 U.S.C. § 506(b), and 11 U.S.C. § 1325(a). The district court's decision treats each missed payment as if it had been reduced to a money judgment on the date it became due. This misconstrues the concept of cure embodied in § 1322(b).

█ A Chapter 13 debtor is able to modify the rights of any secured creditor except one whose claim is secured by a mortgage on the debtor's principal residence. 11 U.S.C. § 1322(b)(2). With regard to long-term debts, *i.e.,* debts on which the last payment is due beyond the life of the wage-earner plan, the debtor may propose to cure any existing default. 11 U.S.C. § 1322(b)(5). The mortgage debt to Landmark is such a long-term debt; in addition, because the claim involves a mortgage on the debtor's principal residence, Landmark's rights under the contract may not be modified. The only requirements imposed by the Code are that the cure be accomplished "within a reasonable time" and that the regular mortgage payments be maintained. The Morgans' plan elected to take advantage of the cure provisions by proposing to (1) resume making regular monthly mortgage payments of $404, and (2) have the trustee pay off the accrued arrearage, at face value, out of the approximately $300 excess of income over expenses.[2] Landmark's first argument is that one of the Code's cramdown provisions, § 1325(a)(5), requires that the plan provide Landmark with the present value of its arrearage claim. This argument, however, is flawed because it fails to recognize the distinctions between cure and cramdown.

█ In a cramdown, the Code requires that the secured creditor receive the present value of his secured claim within the life of the plan. This provision, plus the additional requirement that the creditor retain its lien on the collateral, is the means by which the Code compensates secured

---

**2.** Under 11 U.S.C. § 1326, a Chapter 13 debtor must begin making his proposed payments within thirty days of filing his petition for relief. Assuming this was done by the Morgans, we

estimate that the mortgage arrearage would be paid off, without interest, in approximately one and one-half years from filing.

creditors for any modifications of their rights. The present value test of § 1325 is designed to factor in the time value of the deferred payments in order to assure full satisfaction of secured claims.

■■ The cure of a mortgage or other long term debt is a distinct means of treating the claims of some secured creditors.[3] Like a cramdown, it may be imposed on creditors without their consent. It operates, however, in an entirely different manner. Instead of assuring that the creditor receives the full value of his secured claim during the life of the plan, a cure reinstates the original pre-bankruptcy agreement of the parties. Moreover, within the limited class of claims which are subject to cure, a mortgagee's rights may not be modified in any way. 11 U.S.C. § 1322(b)(2). A cure under § 1322(b)(5) is not a modification of the mortgagee's rights. 5 *Collier on Bankruptcy*, ¶ 1322.09[4] (15th ed.1986). "Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts." *Appeal of Capps*, 836 F.2d 773, 777 (3d Cir.1987). Unless contractually provided for or payable under applicable nonbankruptcy law, interest on defaulted payments is not required under § 1322(b)(5). *Id.; In re Terry*, 780 F.2d 894 (11th Cir.1985); *In re Brown*, 91 B.R. 19 (Bankr.E.D.Va.1988); *contra In re Colegrove*, 771 F.2d 119 (6th Cir.1985) (criticized in *Collier, supra*).

■■ To summarize, the principal components of a § 1325 cramdown are retention of the lien by the secured creditor and provision for the payment, during the life of the plan, *i.e.*, 3–5 years, of the full value of the secured claim. The cramdown route necessarily involves a modification of the creditor's rights with regard to such factors as number of payments and the rate of interest.[4] *Capps*, 836 F.2d at 776. The rights of a creditor whose claim is secured by a mortgage on a debtor's principal residence, however, may not be modified. A debtor whose regular payments under the mortgage agreement are due beyond the life of the wage earner plan, as is the case in the instant appeal, may propose to cure the default. A cure essentially involves (1) satisfying any arrearages currently due, within a reasonable time, and (2) maintaining regular mortgage payments as they come due. The present value test of the cramdown section, § 1325(a)(5), is irrelevant because the creditor's rights have not been modified. *Collier*, ¶ 1322.09[4]. Whereas the cramdown route compensates the secured creditor with the present value of his collateral, the cure route reinstates the initial agreement which is the basis of the claim regardless of the value of the collateral.

Landmark also points to § 506(b) and a recent decision, *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), as authority for the proposition that the bank, as an oversecured creditor, is entitled to postpetition interest on its arrearage claim during the pendency of the case, *i.e.*, after filing but prior to confirmation. *Ron Pair* erased the consensual/nonconsensual distinction which some courts had used to deny § 506(b) interest on claims based on nonconsensual liens such as tax liens. Despite some broad language in *Ron Pair*, however, we think § 506(b) is inapplicable in the context of mortgage cures.

■■ Section 506(b) provides the means by which the extent of a creditor's secured claim is established. *In re Hall*, 117 B.R. 425 (Bankr.S.D.Ind.1990). In the case of an oversecured creditor, the *secured* claim may include, up to the value of the collateral itself, two additional components: (1) fees, such as late charges, under the agreement giving rise to the claim, and (2) interest, regardless of whether the agreement provides for it or whether the claim was even created by an agreement.

---

3. An agreed modification of the creditor's rights and the surrender of collateral are two other means of treating secured claims. 11 U.S.C. § 1325(a)(5)(A), (C).

4. In a cramdown, the debtor can effectively reduce the contract rate of interest or extend the maturity date of the loan, as long as the value of the secured claim, discounted to present value, is paid.

*Ron Pair,* 489 U.S. at 240, 109 S.Ct. at 1030. By accretion, the value of the secured claim grows by the agreed charges and by interest from the date of filing through the confirmation date. A mortgage cure, in a sense, occurs outside the ambit of the Code. Any charges such as late fees may indeed be payable by the mortgagor who elects to cure, but such charges would be mandated not by § 506(b) but, rather, because they are integral elements of the cure. *See In re Colegrove,* 771 F.2d 119, 125 (6th Cir.1985) (Celebreeze, J., dissenting) ("Congress in enacting Sections 1322(b)(2) & (b)(5) intended to treat security interests in principal residences different from all other claims."). The valuation of the claim or the collateral is simply immaterial when the original agreement is reinstated and the debtor elects to make all the payments called for by the agreement. The mortgagee receives only the interest and other charges to which it is entitled under the agreement and applicable nonbankruptcy law. *Collier,* ¶ 1322.09[4]; *In re Laguna,* 114 B.R. 214, 216 (9th Cir. BAP 1990).

## IV.

Our conclusion that the mortgage agreement and applicable nonbankruptcy law govern the parameters of the debtors' cure does not end our inquiry. While the mortgage documents do not include any provision for late charges or interest on arrearages in the event of default, it may be that state law is an independent source of an entitlement to the interest sought by Landmark. In a memorandum opinion, the district court relied on state contract law, in conjunction with §§ 1322 and 506, to buttress the decision to increase the arrearage claim by 8% from the date each payment was due through the date it was paid. The bankruptcy court, on the other hand, looked no further than the agreement of the parties in holding that the payment of

interest on the mortgage arrearages was not required for confirmation of a Chapter 13 plan because the additional interest was not provided for in the loan documents. We believe the bankruptcy court reached the correct decision.

■ At the outset, we reject the contention of amicus curiae that the instant case is controlled by the federal rule applied outside the bankruptcy arena that allows prejudgment interest where the underlying claim is a contractual obligation to pay money to the United States. *See West Virginia v. United States,* 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987). Cure of defaults implicates different federal policies altogether. *See In re Stokes,* 39 B.R. 336, 340 (Bankr.E.D.Va.1984) ("Bankruptcy law is remedial legislation enacted to provide a debtor with a financial fresh start."). Moreover, no judgment claim is involved in the instant appeal. The state law governing mortgage agreements is the controlling applicable nonbankruptcy law.

■ The decision to rely on state law, however, does not simplify the matter because we can uncover nothing in the statutes or case law of Virginia which clearly governs the situation involving interest on mortgage arrearages. Had the mortgage documents included a provision for the payment of late charges, to the extent permitted by Va. Code § 6.1–330.80 (1987), there would be no question that Landmark would be entitled to such amounts as part of the debtors' cure. *See Colegrove,* 771 F.2d at 124 n. 1 (Celebreeze, J., dissenting). So long as it does not violate state law, a contractual agreement to pay interest on arrearages would also dictate the contours of a cure.[5] However, the loan documents make no reference to either late charges or interest on late payments. Indeed, the very failure to include such terms in a document drafted by the bank is strong evidence that the parties did not intend that

---

5. According to the loan documents, the debtors agreed to pay certain collection costs as well as any sums, plus interest at the contract rate, expended by Landmark to cure any default in the payment of taxes, assessments, levies, charges or insurance premiums. As agreed

upon charges, these could be properly required of the proposed cure. In this regard, we note that the Morgans' petition states that their home had been "involved in a foreclosure proceeding," indicating that Landmark had already expended some of these sums.

interest on arrearages was to be required in the event of default and cure.[6]

Amicus curiae also attempts to show that Virginia law provides for interest on overdue payments from the date each payment is due, a contention with which the district court apparently agreed.[7] However, neither of the two opinions cited by the district court, *Campbell v. Sickels*, 197 Va. 298, 89 S.E.2d 14 (1955), and *Burruss v. Baldwin*, 199 Va. 883, 103 S.E.2d 249 (1958), involved the question of allowing interest on interest absent an agreement therefor. Another Virginia decision, moreover, is more directly on point and held that, absent an agreement, interest on interest would not be required. *Blanchard v. Dominion Nat'l Bank*, 130 Va. 633, 108 S.E. 649 (1921); *see generally*, 27 A.L.R. 78 (discussing the right to interest on overdue installments of interest in the absence of an agreement in that regard). Other courts that have denied interest under the same circumstances have done so on the basis of relatively clear state statutes forbidding such interest. *See In re Terry*, 780 F.2d at 897 (Georgia statute provided that, in a foreclosure, "creditors would not be entitled to interest on the unpaid installments to the extent they were interest"); *In re Laguna*, 114 B.R. at 216 (§ 506(b) does not require allowance of interest on contract arrearages absent a contract provision because allowance of such interest would be inconsistent with state law). In the absence of any clear authority to the contrary, we believe the agreement of the parties should control, and that agreement is silent on the matter.

 We are convinced that the proper rule is this: in a cure under § 1322(b) of a default in the payment of mortgage installments, the bankruptcy court may confirm the plan if the plan provides for the payment, without interest unless the agreement and/or applicable nonbankruptcy law requires otherwise, of all missed installment payments due as of the filing date. In the instant appeal, we hold that neither the agreement nor applicable nonbankruptcy law requires the payment of interest on the arrearages.

REVERSED AND REMANDED.

---

**6.** In fact, the subject of default is covered in several parts of the note, yet interest on arrearages is mentioned nowhere. In event of default, the note states that the mortgagor could be required to pay "the entire unpaid principal balance of [the] loan plus any accrued Finance Charge," the "Finance Charge" being a sum certain set out in the note and referring to the total interest payable over the ten year life of the loan. Elsewhere in the note, the mortgagors agree that, in the event that any portion of the principal balance is unpaid after maturity of the note, they would "pay interest on the remaining [unpaid principal] balance until paid in full at the rate of interest specified [in the note]." A remaining balance at the maturity date of the note would necessarily mean that the mortga-

gors had defaulted in at least one monthly payment or part thereof. In yet another section, the mortgagor agrees that, in event of default, the bank would "apply a partial prepayment to any installments until the loan is brought current." These provisions are not specific enough to mandate the interest requested by Landmark. *See In re Murray*, 116 B.R. 307, 308 (Bankr.M.D. Ga.1990).

**7.** The choice of Virginia's statutory rate of interest, Va. Code § 6.1–330.53, indicates that this argument carried greater weight with the district court than the arguments based on § 506 or § 1325.