**In re Jessie SESSION and Shirley Session, Debtors.**

**Bankruptcy No. 89–62810.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

May 20, 1991.

---

Rodney S. Scott, Longview, Tex., for Jessie and Shirley Session, debtors.

Paul H. Sanderford, Gandy, Michener, Swindle, Whitaker & Pratt, Fort Worth, Tex., for Chemical Financial Corp.

OPINION

DONALD R. SHARP, Bankruptcy Judge.

This matter came on for Confirmation of Debtors' Chapter 13 Plan pursuant to a regularly scheduled hearing on January 16, 1991, in Tyler, Texas. Chemical Financial Corporation objected to the confirmation on the grounds explained below. This opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule of Procedure 7052 and disposes of all the issues presented to the Court.

FACTUAL BACKGROUND

The facts of this case are not materially disputed. Chemical Financial Corporation, hereinafter known as ("Creditor"), is the holder of a perfected security interest in Jessie and Shirley Sessions', hereinafter known as ("Debtors"), 1986 Magnahome, mobile home. The consumer credit contract securing Creditor's interest in the Debtors' mobile home was executed on July 15, 1986, in the principal amount of $30,037.00 at 13.5% interest. The terms of the contract called for 180 monthly payments each in an amount of $389.97.

Throughout 1989 Debtors experienced difficulty in making their monthly payments to Creditor. Subsequently, on December 28, 1989, Debtors filed for relief under Chapter 13 of the Bankruptcy Code. Creditor subsequently filed a motion to lift the automatic stay pursuant to 11 U.S.C. § 362. The Court, after due consideration, denied Creditor's Motion to Lift Stay, but upon joint request of the parties, utilized the appraisal testimony of the expert witnesses to hold that Debtors' mobile home had a fair market value of $13,500.00.

On August 27, 1990, Debtors filed a Chapter 13 Plan of Reorganization which in pertinent part proposes to pay the $13,500.00 secured value of Creditor's claim over the remaining 11 years of the consumer credit contract at the pre-petition contract rate of 13.5% interest. However, Debtors propose to reamortize the $13,500.00 value of the mobile home over 11 years, thereby reducing the monthly contract payment from $389.97 to $196.83. Furthermore, Debtors propose to either waive or treat as unsecured for purposes of plan distribution the $1,559.88 in contract arrearages. Creditor's Objection to Confirmation of Debtors' Plan argues that Debtors' proposals are impermissible under the dictates of the Bankruptcy Code.

DISCUSSION OF LAW

The first issue for consideration before this Court concerns whether Debtors may modify the amortization schedule of a reduced secured claim so as to pay that claim over the remaining term of the original contract. The second issue raised by Debtors concerns whether Debtors are required to cure contract arrearages through their Plan and if so, whether Debtors may allocate those arrearages to the unsecured portion of the original claim. Necessary to the Court's consideration of these proposals is an examination of 11 U.S.C. § 506

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under § 553 of this Title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any

hearing on such disposition or use or on a plan affecting such creditor's interest; and 11 U.S.C. § 1322

(b) Subject to sub-sections (a) and (c) of this section, the plan may—

(2) Modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) Provide for the curing or waiving or any default;

----------------

(5) Notwithstanding paragraph (2) of this sub-section, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

----------------

(c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

Creditor has attempted to support its position by citing the recent line of cases following the lead of *In re: Hougland*, 886 F.2d 1182 (9th Cir.1989) in extending § 506 to long-term debt secured only by real property that is the debtor's principal residence. This Court, as well as two courts at the circuit level have embraced the logic and application of the *Hougland* analysis. *In re: Honett*, 116 B.R. 495 (Bkrtcy.E.D. Tex.1990); *Wilson v. Commonwealth Mortg. Corp.*, 895 F.2d 123 (3rd Cir.1990); *In re: Hart*, 923 F.2d 1410 (10th Cir.1991).[1]

■ The act of bifurcating an allowed claim pursuant to § 506(a) into secured and unsecured portions requires the debtor to address separately in a proposed Chapter

13 Plan treatments for each claim. As to the unsecured portion of the claim a debtor may, pursuant to § 1322(b)(2), modify the rights of the creditor within the Plan. *Wilson v. Commonwealth Mortg. Corp.*, 895 F.2d 123, 128 (3rd Cir.1990); *In re: Hart*, 923 F.2d 1410, 1415 (10th Cir.1991). This allows the debtor to address the unsecured portion of a creditor's claim without regard to the terms of the contract or mortgage instrument. The parties herein do not disagree that this is the proper analysis as to the unsecured claim. With regard to the secured portion of the Creditor's claim Creditor argues that the Debtor's ability to modify the terms of the contract or mortgage is not so unlimited.

Creditor argues that the permissible treatment of this secured claim is governed by 11 U.S.C. § 1322(b)(2) and this Court's ruling in *In re: Honett*, 116 B.R. 495, 498 (Bkrtcy.E.D.Tex.1990). The Creditor would require that all relevant payment terms of the debt instrument remain intact save the necessary shortening of the maturity date of the debt due to the § 506(a) reduction in the outstanding principal balance. It is clear that the Creditor's argument on this point must be rejected. The *Honett* case dealt with a claim secured by a security interest in real estate that was the Debtors' principal residence. The teachings from the *Honett* case and the line of cases from which it springs are simply not applicable to the instant proceeding.

Although the Creditor's reliance on the principles enunciated in *Honett* is misplaced, we still must analyze the Plan and the proposals by the Debtors to determine whether the proposed treatment of the secured portion of the claim is proper. After a careful review of Debtors' proposal and relevant case law and statutory authority, this Court is of the opinion that Debtors' proposal is also impermissible.

Recently, in the case of *In re: Scott*, 121 B.R. 605 (Bkrtcy.E.D.Okl.1990) this issue was addressed. The factual background in *Scott* is very similar to the factual background of the present case. In *Scott*, Debtors sought to modify secured claims

---

**1.** It must be noted that this line of authority is    not universally accepted.

pursuant to § 1322(b)(2) and provide for their payment over periods exceeding five years. The court in *Scott* held that debtors may treat secured creditors through their plans in one of two ways. First, if a debtor chose to modify a secured claim, the claim as modified would be required to be liquidated within the confines of the Chapter 13 Plan. The second alternative for a debtor was to cure any default or arrearage through the Plan while simultaneously maintaining regular payments under the mortgage. Debtors' proposal to modify a secured claim and liquidate it throughout a period exceeding the term of the Chapter 13 Plan was impermissible since § 1322(c) requires that Plans may not provide for Chapter 13 payments under any circumstance for a period exceeding five years. This Court is of the opinion that the reasoning of the *Scott* court is correct. That reasoning and a clear reading of § 1322(c) prohibits Debtors' proposal. The precatory nature of § 1322(b)(2) provides that "the *plan may*—modify the rights of holders of secured claims ..." (emphasis added). Concurrently, § 1322(c) provides for a term limitation on the life of a Plan.[2] Reconciling these two provisions leads to the inescapable conclusion that secured claims as modified must be dealt with within the confines of a Plan. Any provision allowing modified payments to exceed the term of a Plan would in effect result in a de facto Plan exceeding the allowable periods provided in § 1322(c). *See also In re: Burke–Evanoff,* 116 B.R. 614 (Bkrtcy.S.D.Ohio 1990).

The second issue for consideration by this Court concerns the latitude possessed by Debtors in the treatment of contract or mortgage arrearages. At the time of Plan confirmation, Debtors were in arrears $1,559.88. Debtors propose to treat this arrearage one of two ways. First, Debtors propose to waive the arrearages pursuant to 11 U.S.C. § 1322(b)(3) which provides for the waiving of defaults. Alternatively, Debtors propose that the arrearage be allocated to the unsecured portion of Creditor's claim.

On the other hand, Creditor maintains that not only is Creditor entitled to a cure of the arrearage through Debtors' Chapter 13 Plan pursuant to 11 U.S.C. § 1322(b)(3) or (5) but that said cure is to be in addition to and over and above Creditor's allowed secured claim. The dispute is whether the Debtors' arrearages are allocable to the secured portion of Creditor's § 506(a) claim or to the unsecured and dischargeable claim.

■ Generally, a debtor can face three separate scenarios in addressing arrearages within a Chapter 13 Plan. Depending on the scenario faced, a debtor has the option of either modifying the secured debt and cramming it down pursuant to 11 U.S.C. § 1322(b)(2) and 11 U.S.C. § 1325(a)(5) or employing the curative devices of 11 U.S.C. § 1322(b)(3) or (5). First, if a debtor strips down a claim pursuant to § 506(a) and permissibly modifies the claim pursuant to § 1322(b)(2) the debtor must liquidate the entire secured claim within the confines of the Chapter 13 Plan i.e. cramdown. If the debtor chooses this route, the debtor is only required to comply with § 1325(a)(5) requiring that a secured creditor receive the present value of its claim over the life of the Plan. Under this scenario, the concept of curing arrearages or the state of the debtor's payment history on the debt has no applicability.

■ The second option for a debtor in dealing with arrearages in the context of a Chapter 13 Plan concerns debtors subject to claims on which the last payment is due beyond the term of the Chapter 13 Plan. 11 U.S.C. § 1322(b)(2) and (5). In this situation, a debtor is allowed to cure any arrearages pursuant to § 1322(b)(5) which allows for the curing of arrearages on long-term debt. Under these circumstances, a cure is not an impermissible § 1322(b)(2) modification. *Landmark Financial Services v. Hall,* 918 F.2d 1150, 1154 (4th Cir.1990).

■ The last option available to a debtor in addressing the treatment of arrearages concerns arrearages on debts in which the

---

**2.** The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years. 11 U.S.C. § 1322(c).

last payment on said debt is due within the time frame of the Chapter 13 Plan and the debtor either chooses not to or is unable to modify the claim under § 1322(b)(2). In such a situation, a debtor's only curative recourse is § 1322(b)(3) which is the general provision allowing for the curing of all defaults. This Court is of the opinion that the § 1322(b)(3) provisions for a waiver do not apply in this case and can only be utilized in extraordinary situations such as erasing defaults based on due on sale clauses, etc. 5 *Collier on Bankruptcy* para. 1322.08 at p. 1322–17 (15th Ed.1990).

■ In order to address the remaining arguments of the parties, it is necessary to once again revisit 11 U.S.C. § 506(a) and its relationship to 11 U.S.C. § 1322(b)(2). By its terms, "§ 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). Thus, it appears that the classification of an arrearage is limited by the terms of § 506(a) to being allocated to either the secured or unsecured portion of a claim.

■ As previously stated, Debtors argue that any outstanding mortgage arrearages are to be allocated to the unsecured portion of Creditor's claim. In the opinion of this Court, Debtors' argument fails for two reasons. First, on a prior occasion, this Court has considered this issue and has concluded that any attempts by debtors to strip down long-term indebtedness while allocating any outstanding arrearages to the unsecured portion of the creditor's claim is per se lacking in good faith. *In re: Honett*, 116 B.R. 495, 498 (Bkrtcy.E.D.Tex.1990); 11 U.S.C. § 1325(a)(3). Illustrative of this Court's position is the court's holding in *In re: Cole*, 122 B.R. 943, 951 (Bkrtcy.E.D.Pa. 1991) in which the court, paraphrasing the position of the court in *In re: Hyden*, 112 B.R. 431, 433–434 (Bkrtcy.W.D.Okl.1990) held that

A debtor who has made all or most of the pre-petition payments due under a long-term obligation should not be placed in a

worse position than a debtor who has missed all or most of the pre-petition payments simply because the payments were made. If we followed the debtor's suggestion that her mortgage can be re-amortized to account for its secured and unsecured portions, we would be rewarding her simply because she has a poor payment record. The mortgage balance and hence the unsecured portion of the mortgagee's claim is increased solely because of the debtor's failure to make payments. The debtor invites us to reduce her monthly payments as a function of this large unsecured balance. Therefore, the debtor asks us to build an incentive for her to refuse to make mortgage payments into her mortgage transaction.

This Court acknowledges that its position on this topic is not mandated by the Code. However, for the reasons stated in *Cole*, this Court is loathe to hold otherwise. Thus, it is the opinion of this Court that good faith requires that a debtor not allocate arrearages to the unsecured portion of a creditor's claim.

■ Second, Debtors' proposal fails to qualify, within the confines of either a 11 U.S.C. § 1322(b)(5) cure or a 11 U.S.C. § 1325(a)(5) cramdown, the only two options available to a Chapter 13 debtor in dealing with a secured claim.[3] *Landmark v. Hall*, 918 F.2d 1150 (4th Cir.1990); *In re: Scott*, 121 B.R. 605 (Bkrtcy.E.D.Okl.1990); *In re: Cole*, 122 B.R. 943 (Bkrtcy.E.D.Pa. 1991). If Debtors had elected to cramdown Creditor's secured claim the entire secured claim would be required to be liquidated within the Chapter 13 Plan. As such, no provision would be required for curing arrearages. However, since Debtors' proposal to pay Creditor's secured claim exceeds the legitimate time frame for a Chapter 13 Plan this Court holds that by definition Debtors' proposal fails to qualify as a cramdown. Similarly, Debtors' failure to provide for payment of arrearages within the Plan while continuing payments under the original term of the contract fails to comply with the curative provisions of 11

---

**3.** Of course, this statement reflects the only options that a debtor can unilaterally impose on a secured creditor. The alternative treatments of voluntary acceptance by the creditor or surrender of the collateral are not present or dispositive in this case. 11 U.S.C. § 1325(a)(5).

U.S.C. § 1322(b)(5). The net effect of an election to cure a secured claim is that the original pre-bankruptcy agreement of the parties is reinstated. *Landmark v. Hall,* 918 F.2d 1150, 1154 (4th Cir.1990) Reinstatement of the pre-bankruptcy agreement between the parties in this case would require the Debtors to not only continue making regular monthly contract payments to Creditor but to cure all outstanding arrearages within the Plan. In that light, Debtors' proposal to treat arrearages as unsecured is simply without legal basis.

In summary, it is the Court's opinion that the Debtors have two options for the treatment of Creditor's claim. First, the secured claim of $13,500.00 (including the arrearages) can be included in the Plan and completely discharged within the Plan in accordance with 11 U.S.C. § 1322(b)(2). Second, the Debtors can reinstate the original contract by resuming payments under the original contract term while curing the arrearage with appropriate payments within the Chapter 13 Plan as provided in 11 U.S.C. § 1322(b)(5). Since the Debtors have done neither of these and for the reasons discussed above, it is the Court's opinion that the confirmation of the Debtors' Plan must be denied.