**In re Sabas SANCHEZ, Jr. and Pamela Susan Sanchez, Debtors.**

**Bankruptcy No. 91–60569.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Feb. 20, 1992.

Rodney Scott, Longview, Tex., for debtors.

Ruth Yeager, Asst. U.S. Atty., Tyler, Tex., for the United States of America through its agency the Farmers Home Administration (FmHA).

---

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

This matter came on for consideration of the Objection of the United States of America through its agency, the Farmers Home Administration, hereinafter ("FmHA"), acting by and through the United States Attorney for the Eastern District of Texas, to the confirmation of the First Amended Chapter 13 Plan of Sabas Sanchez, Jr. and Pamela Susan Sanchez, hereinafter referred to as ("Debtors"), pursuant to a regular setting. This opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 and disposes of all the issues presented to the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed a Petition for Relief under Chapter 13 of the Bankruptcy Code on March 29, 1991. Debtors' chief creditor is FmHA. FmHA holds a deed of trust in the amount of $37,500.00 which is secured by Debtors' homestead. The promissory note securing FmHA's deed of trust requires monthly payments of $314.00 with the final installment being due in January 2022. As of the date of Debtors' petition, Debtors were in arrears on their payments in the amount of $4,954.39.

Debtors' plan proposes to cure these arrearages within the plan over the plan term of 52 months while concurrently maintaining regular monthly payments outside of the plan. Debtors' plan does not provide for the payment of interest on these mortgage arrearages. It is the absence of any provision requiring payment of interest on mortgage arrearages that has caused the FmHA to file an objection to the confirmation of Debtors' plan.

FmHA complains that the failure of Debtors' plan to provide for the payment of interest on mortgage arrearages is viola-

724 as detailed in *In re: Darnell* 834 F.2d 1263, 1267 n. 9 (6th Cir.1987).

tive of section 1325(a)(5)(B)[1] of the Code. In pertinent part, this provision requires as a prerequisite to confirmation of a Chapter 13 plan that the plan provide that a secured claimant, whose claim is to be paid through a Chapter 13 plan, receive the present value of its claim over the term of the plan.[2] The FmHA maintains this position in spite of the fact that neither the deed of trust nor the promissory note securing Debtors' homestead provide for the payment of interest on unpaid arrearages. Furthermore, the FmHA's argument is compounded by the admission that the entire amount of arrearages currently owed consists entirely of interest.[3] Debtors object to the payment of interest on arrearages as being outside the terms of their agreement with FmHA and since this issue is a matter of first impression for this Court, the matter was taken under advisement.

## DISCUSSION OF LAW

The issue before this Court concerns the entitlement of a secured creditor who holds a security interest in a debtor's principal residence to receive interest on mortgage arrearages in the absence of any express contractual provision between the parties providing for interest. While this issue is a matter of first impression for this Court, this issue has been addressed by at least five circuit courts[4] as well as numerous bankruptcy courts. After a review of the caselaw, it is apparent to this Court that two separate and distinct trains of thought on the subject exist.

The first viewpoint is represented by the holding in *In re Colegrove*, 771 F.2d 119 (6th Cir.1985). In *Colegrove*, the debtors proposed to repay, in their plan, without interest, the arrearages on a mortgagee's oversecured claim secured only by debtors' principal residence. The *Colegrove* court found this treatment impermissible for a number of reasons. First, without discussion, the court concluded that under section 506(b), the mortgagee, as an oversecured claimant, was entitled to interest on its claim. Second, the court held that section 1325(a)(5)(B) requires that a secured creditor, being paid through a plan, receive present value of its claim—this necessarily requires the payment of interest. Third, the court dealt with the lack of contractual language between the parties requiring the payment of interest on mortgage arrearages through a reconciliation of section 1322(b)(2) and section 1322(b)(5). Under section 1322(b)(2), the modification of a claim secured only by a security interest in real property that is a debtor's principal residence is prohibited. However, section 1322(b)(5) provides that notwithstanding the preceding provision, a plan may provide for a cure of any arrearage.[5] Therefore, the court concluded that the payment of interest on the arrearages was not an im-

---

1. All future references to Code sections shall be to 11 U.S.C.A.

2. (5) with respect to each allowed secured claim provided for by the plan—

   . . . . .

   (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. . . .

3. The FmHA uses the DIAS (Daily Interest Accrual System) accounting system which requires that all initial mortgage payments be used first to pay in full the accrued interest as of the date of payment before any amount is applied to principal. Given the use of the DIAS system, FmHA's claim can properly be categorized as a request that Debtors be required to pay interest on interest.

4. Unfortunately, the Fifth Circuit is not among the circuit courts that have considered this issue.

5. (b) . . . the plan may—

   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

   . . . .

   (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . .

permissible modification but was "merely incident to the cure" envisioned in 1322(b)(5). *Id.* at 122.

The holding in *Colegrove* was a sharply divided opinion and has been pointedly criticized by at least one commentator on bankruptcy matters. *See* 5 *Collier on Bankruptcy* para. 1322–09 at 1322–23 (15th ed. 1991) (the reasoning of the majority in [Colegrove] does not withstand analysis). Nonetheless, numerous courts have embraced its logic including the recent opinion of *In re Parker,* 125 B.R. 479 (Bankr. W.D.Tex.1991).

The alternative position on this issue has been embraced by no less than four circuit courts including the recently published opinion of the Ninth Circuit Court of Appeals in *In re Laguna,* 944 F.2d 542 (9th Cir.1991). *See also Landmark Financial Services v. Hall,* 918 F.2d 1150 (4th Cir. 1990); *Appeal of Capps,* 836 F.2d 773 (3rd Cir.1987); *In re Terry,* 780 F.2d 894 (11th Cir.1985). These four opinions all stand for the proposition that in the absence of a contractual provision otherwise, debtors are not required to pay interest on mortgage arrearages as a prerequisite to curing those arrearages in a Chapter 13 plan. Integral to the holding of these courts is their understanding and reconciliation of the following Code sections: section 506, section 1322(b)(2), section 1322(b)(5), and section 1325(a)(5)(B).

In the view of the majority position, the concept of a section 1322(b)(5) cure and the concept of a section 1325(a)(5)(B) cram down are mutually exclusive. Cram down, pursuant to section 1325(a)(5)(B), allows a debtor to modify an agreement with a secured creditor by reducing the secured creditor's claim to an allowed secured claim, altering the amounts and term of the payments as well as revising the interest rate charged. The only prerequisites to a cram down are that the secured creditor

retain its lien and that the present value of the secured creditor's allowed claim be paid through the plan. However, cram down is not available to modify the rights of a secured claimant whose claim is secured only by a security interest in the principal residence of debtor. *See* section 1322(b)(2).

On the other hand, the concept of cure as that term is understood in section 1322(b)(5) is a wholly distinct alternative for a debtor. Explicit in a cure is a reinstatement of the "original pre-bankruptcy agreement of the parties." *Landmark* at 1154. As stated by the court in *Capps,* "[a] cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts." *Id.* at 777. The cure envisioned by 1322(b)(5) is not violative of the anti-modification language of section 1322(b)(2) because it does not modify a mortgagee's rights. *Landmark* at 1154; *Grubbs v. Houston First American Sav. Assn.,* 730 F.2d 236 (5th Cir.1984) (en banc). Since the secured creditor's rights have not been modified, the present value test required by section 1325(a)(5)(B) is irrelevant. *Landmark* at 1154; *Laguna* at 545. In summary, the preceding courts have been unwilling to expand the concept of cure to add the requirement that a debtor pay interest on mortgage arrearages in the absence of a specific contractual provision authorizing such interest.

Similarly, the logic of the majority courts is dispositive of a mortgagee's attempt to obtain interest on arrearages through section 506(b),[6] even if a mortgagee is over secured.[7] Simply put, the statutory provision for interest found in section 506(b) is inapposite to the concept of a mortgage cure which "occurs outside the ambit of the Code." *Landmark* at 1155. So, while interest charges on arrearages might hypothetically be chargeable in a cure, the validity of the basis of these charges would

---

6. To the extent that an allowed secured claim is secured by property the value of which ...... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

7. No evidence was introduced by either party as to whether FmHA's claim was over- or undersecured.

necessarily be found in the mortgage agreement and/or applicable non-bankruptcy law. *Id.* at 1155.

After review, this Court finds the logic and reasoning of the courts representing the majority rule to be more convincing. This Court is of the opinion that the sanctity of home mortgages is not impugned by holding that the concepts of cure and cram down are mutually exclusive. After reading section 1322(b)(5) this Court is left with the impression that in order to cure, a debtor must only cure any mortgage defaults within a reasonable time while concurrently maintaining his obligations pursuant to the mortgage contract. Presumably, FmHA as the drafter of its deed of trust and promissory note could have inserted a term into these documents requiring the payment of interest on any resulting mortgage arrearages. Indeed, this Court is in agreement with the *Landmark* court that the failure of a mortgagee to include such terms in any contract between the parties is indicative of a lack of intent to include the requirement that the mortgagor pay interest on unpaid arrearages. *Id.* at 1155–1156. Since this element was not bargained for, the Court will not now ex post facto modify the contractual terms between the parties.

Accordingly, since the parties have not specified any contrary state statute controlling on this issue and for the reasons previously stated, it is the opinion of this Court that in the absence of any contractual provision providing otherwise a mortgagee is not required to pay interest on mortgage arrearages which are to be cured through a Chapter 13 plan. Since the FmHA has not objected to the term of the cure proposed by Debtors, the Court will consider that argument waived.

For the reasons previously given by this Court, it is the opinion of this Court that the objection of the FmHA to Debtors' proposed First Amended Chapter 13 Plan is overruled. All other objections raised by FmHA are also overruled for lack of evidence. Therefore, the Court finds that good cause exists to confirm Debtors' First Amended Chapter 13 Plan. However,

Debtors are instructed to amend their Order of Confirmation to reflect the actual amount of arrearages owed to the FmHA at $4,954.39. Upon presentation of such an Order, the Debtors' First Amended Chapter 13 Plan will be APPROVED.