In re Anna S. LITTON, Debtor.

**Anna S. Litton, Appellant,**

v.

**Wachovia National Bank, Appellee.**

**Bankruptcy No. 7–00–03809–WSA.**

**Civ. No. 1:01CV00048.**

United States District Court,
W.D. Virginia,
Abingdon Division.

March 28, 2002.

in a published opinion, held directly to the contrary. *Ryan v. Homecomings Fin. Network,* 253 F.3d 778 (4th Cir.2001).

Robert Tayloe Copeland, Copeland, Molinary, & Bieger, Abingdon, VA, for Appellant.

Mark L. Esposito, Penn, Stuart, & Eskridge, Abingdon, VA, for Appellee.

Jo S. Widener, Bristol, VA, trustee.

### Memorandum Opinion

WILLIAMS, Senior District Judge.

Debtor Anna S. Litton appeals from a final order entered March 30, 2001 in the United States Bankruptcy Court for the Western District of Virginia, Roanoke Division, affirming a prior order entered February 9, 2001, dismissing her Chapter 13 bankruptcy case. For the reasons set forth in this Memorandum Opinion, the judgment of the Bankruptcy Court is hereby **AFFIRMED**.

### I.

The only issue presented in this appeal is whether the bankruptcy court committed reversible error in dismissing Mrs. Litton's Chapter 13 bankruptcy case.

### II.

This case arises out of a series of bankruptcy petitions filed by the debtor, Anna S. Litton (Mrs. Litton), and her husband, James P. Litton (Mr. Litton). The Littons granted a deed of trust on their Washington County property to Central Fidelity Bank to secure repayment of a $193,764 note on May 16, 1988. The Littons encountered financial difficulties sometime thereafter, and Mr. Litton filed for relief under Chapter 11 of the Bankruptcy Code on March 23, 1992. That case was disposed of by an agreed order entered November 14, 1994, signed by the Littons and Central Fidelity, and provided that the outstanding balance of the promissory note would be re-amortized over a fifteen-year term with a balloon payment due January 31, 2000.

Thereafter, Mrs. Litton filed a Chapter 13 case on September 4, 1997. A settlement between the Littons, Wachovia National Bank[1], and Builders Supermarket was reached, disposing of Mrs. Litton's Chapter 13 case and augmenting the settlement in Mr. Litton's Chapter 11 case and was entered March 3, 2000. As perti-

1. Wachovia National Bank is the successor in interest to Central Fidelity.

nent to this case, that agreement provided as follows [2]:

> The secured claim of Wachovia Bank, N.A. ("Wachovia") is fully secured and the outstanding balance due thereunder as of January 18, 2000 was $205,805.11, including accrued interest, costs, fees and charges through said date. Upon entry of this order, the debtor shall tender a payment of $10,000 to Wachovia Bank, N.A. which payment is acknowledged by Wachovia and shall be applied to accrued interest. Interest shall continue to accrue at the current rate. The debtor shall further pay on or before June 30, 2000 the additional sum of $55,000 which shall be applied to accrued interest, late charges and fees. In the event the debtor tenders the sum of $65,000 to Wachovia on or before June 30, 2000, the remaining outstanding balance due as upon its claim as of May 31, 2000 and all fees accrued thereafter shall be re-amortized utilizing a 15–year term and the residential mortgage interest rate afforded by Wachovia Bank as of June 30, 2000 with annual payments of at least $10,000 commencing on January 1, 2001 and on January 1 of each year thereafter with the entire obligation to mature via balloon payment five (5) years from the date of this order or one (1) year after construction of improvements to the Interchange for Exit 17 for Interstate I–81 in Abingdon, Virginia, whichever occurs first. In the event the debtor fails to tender to Wachovia the total sum of $65,000 by June 30, 2000, it shall be entitled to enforce its non-bankruptcy rights and remedies with respect to its collateral pursuant to the amended deeds of trust and other instruments contemplated hereby . . . .

Further, to the fullest extent permitted by law, the debtor and Anna S. Litton do hereby agree that they shall not seek any further modification of the terms of the order or the treatment and terms of payment of the secured claim of Wachovia . . . . The terms of this order shall be binding upon the debtor, Anna S. Litton and any trustee appointed in this or any subsequent bankruptcy proceeding instituted by the debtors.

The Littons were unable to make the $55,000 payment due by June 30, 2000. Wachovia moved to enforce its deed of trust and instituted foreclosure proceedings some time after the default. Those proceedings were halted just prior to the scheduled sale of the property and home by Mrs. Litton's filing of this Chapter 13 case on November 21, 2000. Mrs. Litton's proposed Chapter 13 Plan stated her plan to pay Wachovia as follows:

> The term of this plan shall be three months. Debtor has fallen into arrears with Wachovia Bank which threatens foreclosure. Therefore, Debtor proposes to catch up in arrearages in payments to Wachovia Bank ($55,000) and Builders Supermarket ($3,000) within 30 days, and to make regular payments as called for in the agreement with them. The Trustee's commission will be added to all payments made through the Trustee. The case will then be concluded. General unsecured creditors will receive 100% of any allowed claims. Debtor will comply in all other respects with the Agreed Orders of 3/3/2000 entered by Judges Stone in prior Ch. 13 and Ch. 11 cases.

(Chapter 13 Plan, R. at 10.)

Wachovia filed an objection to the confirmation and a Motion for Relief from Automatic Stay. The Chapter 13 Trustee

---

**2.** The language used is found only in the opinion of the Bankruptcy Court, as a copy of the original order was not submitted in the record before this court, despite its importance to these proceedings.

filed an objection and a Motion to Dismiss or Convert the case to a Chapter 7 filing. These objections and motions were heard at a confirmation hearing on February 5, 2001. The bankruptcy court concluded that the case was an improper use of Chapter 13 process and granted the Trustee's motion to dismiss.

Mrs. Litton filed a timely motion to reconsider along with an affidavit from her and her husband stating the efforts made and difficulties encountered while trying to raise the funds to comply with the Agreed Order. On March 30, 2001, the Bankruptcy Court entered an order denying Mrs. Litton's Motion for Reconsideration. Mrs. Litton filed this appeal on April 9, 2001, seeking review of the bankruptcy judge's decision.

Mrs. Litton is currently a sixty-year-old woman with an approximate monthly income of $1,400. She and her husband operate a small farm and manage some rental properties. In the affidavit filed with the bankruptcy court and made a part of the record on appeal, the Littons state that Mr. Litton negotiated with six separate individuals to sell a boundary of timber, the sale of which was contemplated to pay the $55,000 to Wachovia. The affidavit further states that the Littons lost over 70% of their tobacco crop representing a $15,000 loss of annual income.

Mrs. Litton has briefed her position before this court, and the case is now ripe for a decision.

### III.

A bankruptcy court's findings of fact shall not be set aside on appeal unless a review of the record indicates they are clearly erroneous. FED. R. BANKR. P. 8013. Further, "[t]he bankruptcy court's findings of fact should not be set aside unless they are clearly erroneous, and due regard shall be given to the opportunity of the bank-

ruptcy court to judge the credibility of witnesses." *Farouki v. Emirates Bank Int'l.*, 14 F.3d 244, 250 (4th Cir.1994). However, a bankruptcy court's conclusions of law are subject to *de novo* review. *In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992); *Florida Asset Fin. Corp. v. Dixon*, 228 B.R. 166, 171 (W.D.Va.1998). Mixed questions of law and fact are likewise subject to *de novo* review. *Carter Enters. v. Ashland Specialty Co.*, 257 B.R. 797 (S.D.W.Va.2001).

### IV.

Neither counsel for Mrs. Litton nor the bankruptcy court below have been able to cite any cases dealing with the issue presented in this case. This court is likewise unable to find any cases precisely on point. Although several cases deal with so-called "serial filings" in which the debtor has filed multiple times, those cases address the enforceability of prospective relief clauses alleviating the automatic stay from future filings (known as "drop dead" clauses). *See In re Weaver*, 222 B.R. 521 (Bankr.E.D.Va.1998) (ordering a permanent denial of discharge in bankruptcy and a withdrawal of the automatic stay in any future filings); *In re Edwards*, 222 B.R. 527 (Bankr.E.D.Va.1998) (upholding a foreclosure sale of debtor's residence despite debtor's filing of a new Chapter 13 case the day before the sale based on a consent order entered in a prior case); *In re Plymouth*, 223 B.R. 910 (Bankr.E.D.Va. 1998) (barring debtor from re-filing for 180 days and eliminating the automatic stay should debtor attempt to re-file within that time period; also, recognizing that the state of the law related to prospective orders is unsettled, 223 B.R. at 912, n. 1).

Such is not the case at bar. The agreed order of March 3, 2000 does not contain any drop dead provision. It does, however, contain language that provides for the

enforcement of the order in "any subsequent bankruptcy proceeding instituted by the debtors." It is the enforceability of this clause that is at issue here.

The court below addressed the issue by equating Mrs. Litton's proposed Chapter 13 plan with a modification of the terms of the March 3, 2000 order. Gleaning principles from various Chapter 11 and Chapter 12 cases that allowed modification of previously filed plans in subsequent filings where the debtors had filed in good faith and as a result of unforeseen changed economic circumstances, the court held that a modification of the previously filed agreed order was unwarranted. The bankruptcy court specifically relied on a Chapter 12 case, *Matter of Grogg Farms*, 91 B.R. 482 (Bankr.N.D.Ind.1988), where the court in that case refused to allow a modification of a previous plan where the plan anticipated the debtors post-petition default and provided therefor.

The bankruptcy court found, and this court finds no reason to doubt, that Mrs. Litton filed her case and proposed her plan in good faith. Nonetheless, the bankruptcy court, relying on the principles above, stated four specific reasons why the case should be dismissed. First, the court cited the language within the agreed order binding the parties to the agreement through any subsequent bankruptcy proceedings. The court then goes on to point out that there has been no showing of changed economic circumstances not reasonably foreseeable at the time the agreement was made. The third reason cited by the court is that the agreement specifically anticipated and provided for consequences in the event the Littons defaulted under the agreement. Finally, the court states policy reasons for enforcing the agreement. "If the Court is unwilling to enforce the provisions of its own orders which have been agreed to and requested by the parties, the Court cannot expect creditors to make those concessions favorable to debtors which the creditors would be unwilling to offer without being reasonably assured that those provisions of the compromise favorable to such creditors will either be fulfilled or enforced." (Mem. Op. at 10.)

Mrs. Litton responds that the dismissal of a Chapter 13 case is governed by 11 U.S.C. § 1307(c), listing the ten factors contained therein. Mrs. Litton concedes that the list is not exhaustive, but rather permissive, as recognized by other bankruptcy courts. Nonetheless, Mrs. Litton contends that because she has not violated any of the ten factors considered within 11 U.S.C. § 1307(c) nor the additional factors considered by other bankruptcy courts, then her case was inappropriately dismissed.

 This argument fails by Mrs. Litton's own concession. As previously stated, the factors listed in § 1307 are not exhaustive. From the language of the statute itself, the overriding concern is "the best interests of creditors and the estate." If the bankruptcy court considered these competing interests and came to the conclusion that dismissal is in the best interest of the parties, this court will not overturn that decision unless it is clearly erroneous. This does not appear to be the circumstance in the instant case.

Mrs. Litton also points out that the bankruptcy court treated her plan as a modification of the March 3 agreed order. She urges that her plan is not a modification of the original order, but rather a cure of a default under that order. To support this contention, Mrs. Litton cites *Landmark Financial Services v. Hall*, 918 F.2d 1150 (4th Cir.1990), which contains a detailed discussion of what a cure is and how it operates. According to the Fourth Circuit, a cure does not operate as a modifica-

tion of a pre-existing debt contract. Instead, it operates to reinstate the original contract according to its terms and satisfy any arrearages currently due. 918 F.2d at 1154. Mrs. Litton contends that her plan complies with this definition in that it satisfies arrearages currently due and reinstates the original order.

However, what Mrs. Litton proposes is essentially to cure her previous cure. The agreed order of March 3, 2000 was structured such that the Littons were to cure their $55,000 in arrearages and continue to pay annual payments of at least $10,000 with the outstanding balance as of May 31, 2000 re-amortized over a fifteen-year period. In this case, the Littons have not simply defaulted on their original debt contract, but on the subsequent debt contract that sought to cure to original default.

Such being the case, this court finds the reasoning of the bankruptcy court below compelling. The agreed order of March 3, 2000, the terms of which Mrs. Litton negotiated with her creditors, provided for the events of this case. Specifically, the agreement clearly states that it is to be binding on the parties through "any subsequent bankruptcy proceeding." This language is clear on its face. As this is a part of the negotiated agreement between the parties, this court will uphold the provision.

Further, this court finds especially compelling the policy reasons set forth by the bankruptcy court. At its base level, the agreement between Mrs. Litton and her creditors is a contract negotiated between the parties. For that reason alone this court can and should enforce it. However, this agreement was entered into by the parties and given the blessing of the court in the form of an order. A court is bound to enforce its own orders, for if it does not, in bankruptcy or any other matter, it will soon lose its basis for authority. In addition, as the bankruptcy court correctly notes, creditors lose incentive to negotiate with debtors if the provisions of the agreements can be readily and easily avoided. This being the case, the judgment of the bankruptcy court is affirmed.

## V.

For the foregoing reasons, the judgment of the bankruptcy court is **AFFIRMED**. The Clerk is directed to send copies of this Memorandum Opinion to all counsel of record.